### In re HOWDEN.

(District Court, N. D. New York. November 27, 1901.)

BANKRUPTCY—DISCHARGE—MAKING FALSE OATH.

> A bankrupt, who was 46 years old, had lived with his father on the latter's farm of about 50 acres ever since his majority. Both were widowers, the bankrupt's wife having also lived with him on the farm until her death a few years prior to the filing of the petition in bankruptcy. The bankrupt was his father's only heir, and he had from time to time been given money by his father, and at other times had sold produce and kept the proceeds. The farm produced little more than enough to support the two men. Both testified that there was no agreement to pay the bankrupt for his services, and there was no testimony to the contrary. *Held*, that under the rule requiring objections to a discharge to be sustained by clear and convincing proof, such evidence was insufficient to sustain an objection alleging that the bankrupt had a claim against his father for wages, and that in verifying his schedule, in which he stated that he had no assets, he made a false oath.

In Bankruptcy. On motion to confirm report of referee recommending that the bankrupt's petition for a discharge be denied, and upon exceptions to the report.

The referee finds that the third, fourth, and sixth specifications, filed by the objecting creditor, have been sustained. The third specification charges that the bankrupt made a false oath in verifying his schedule of indebtedness, which contained a statement that he owed Archibald G. Howden, his father, $100, for cash loaned, whereas, in truth and in fact, the said sum was paid to the bankrupt by his father for services rendered. The fourth specification charges that the bankrupt made a false oath in swearing that he had no assets, whereas he was the owner of a chose in action against his father for work, labor and services rendered in the sum of over $1,000. The sixth specification charges false swearing in taking the "pauper oath," the bankrupt well knowing at the time of the existence of the claim of $1,000 and upwards against his father.

James H. Bain, for the bankrupt.
Edgar Hull, for contesting creditor.

COXE, District Judge. The controversy hinges upon the single question whether or not the bankrupt had a claim against his father for work, labor and services which he should have included in his schedules. If such claim did not exist the charge of having made a false oath must fall. At the time the testimony was taken, in the

winter of 1898, the bankrupt was 46 and his father was 87 years of age. They were both widowers and had lived together during almost the entire time in controversy upon a small farm of 53 acres situated in the village of Ft. Edward. The bankrupt's wife lived with him on this farm until 1894, when she died, and since then the men have lived alone. Both the bankrupt and his father testify that there was no agreement to pay the bankrupt for his services on the farm and no one swears to the contrary. In these circumstances the law is well settled and is clearly stated by the court of appeals of New York as follows:

"The parent is not legally entitled to the custody or earnings of his children after they arrive at the age of twenty-one; * * * yet if they live with him as members of his family without any contract or understanding that he shall pay for their services or receive pay for their maintenance, the law will not imply a promise to pay on either side." Williams v. Hutchinson, 3 N. Y. 312, 53 Am. Dec. 301.

Again the court says:

"It is well settled that where parties sustain the relation of parent and child, either by nature or adoption, the former in the absence of an express promise cannot be required to pay for services rendered by the child, nor the latter be obliged to pay for maintenance." Otis v. Hall, 117 N. Y. 131, 22 N. E. 563.

The learned referee, after a most careful and thorough investigation of the facts and law, reaches the conclusion that at the time the schedule was verified the bankrupt owned a claim against his father for at least $100, for service rendered during the preceding six years. He is of the opinion that although there was no contract there was an "understanding" that wages should be paid. This conclusion is based upon presumptions drawn from discrepancies and contradictions in the testimony and from the inherent improbability that the bankrupt would work during 25 years after coming to man's estate for nothing. On the other hand it must be remembered that in some aspects the case is sui generis. The bankrupt evidently possesses little self-respect and no ambition. He was content during the years when most men are striving to better their condition to hold a menial position on a small, unproductive farm, affording, apparently, little more than a bare subsistence for the two men. The bankrupt was his father's only heir and his conduct was more that of a part owner than a servant. He was given money from time to time, sold produce and kept the proceeds and performed other acts inconsistent with the theory that he was merely a hired servant. In short, is there anything incompatible with the theory that the two men, father and son, were content to live on the farm, getting a little more than their living therefrom, the son furnishing the labor and the father the capital and both expecting that the son would eventually own the entire property? If the question is to be determined by direct testimony it is all in favor of the bankrupt, and if it be a case for inferences and conjectures it must be admitted that they do not all point in one direction. Having read the testimony in the light of the briefs and opinion of the referee the court is unable to say that the bankrupt's right to wages has been established.

Even were this an ordinary action of assumpsit there would still be grave doubt as to the plaintiff's right to recover; but we are here dealing with a charge which must be established not by a mere preponderance of testimony, but by clear and convincing proof. If there be a fair doubt as to the bankrupt's claim against his father the discharge should be granted. That it is doubtful is, apparently, conceded by the referee when he says, "I am aware that this is a very close case." In such circumstances the bankruptcy act requires that the doubt shall be resolved in favor of the bankrupt.

Many of the most careful students of the law are convinced that the act is far too liberal and lenient in permitting discharges. There are, practically, but three grounds for withholding a discharge, namely, fraudulent failure to keep books, fraudulent concealment of property and making a false oath in bankruptcy proceedings. The other offenses mentioned in section 29 are evidently directed at persons other than the bankrupt, and though a bankrupt may be guilty of these offenses they are seldom invoked to prevent discharges. If he has done none of these acts the judge is commanded to discharge him no matter how dishonest he may have been in other respects. Unquestionably many unworthy men have been released, but while the law remains unamended there is no alternative but to enforce it. The authorities are unanimous in holding that the burden is upon the opposing creditor to prove his objections, not necessarily beyond a reasonable doubt, but by clear and convincing testimony. In re Ferris, 5 Am. Bankr. R. 246, 105 Fed. 356; In re Gaylord, 5 Am. Bankr. R. 410; In re Corn, 5 Am. Bankr. R. 478, 106 Fed. 143, and cases there cited. In Re Ferris, supra, the facts were quite similar to those in the case at bar. It was alleged that unfounded claims were allowed to the sister and brother of the bankrupt. The court says:

"There is much in the testimony of the bankrupt that indirectly lends support to this position, yet it is not affirmatively proven that the debts due to the brother and sister were unfounded. * * * The opposing creditor having failed, therefore, to sustain the specification by sufficient evidence the same must be overruled."

In the present case it must be conceded that the claim against the father "is not affirmatively proven," and the court is unable to say, even if resort be had to presumption, what, if anything, was due the bankrupt. This being so it can hardly be said that the omission of so nebulous a claim from the schedules involved the bankrupt in the crime of having made a false oath. In this connection it may be proper to say, as both counsel agree as to the fact, that an action brought by the trustee to recover wages was withdrawn by him after issue joined.

It is thought that the bankrupt is entitled to a discharge.