In re HAMILTON et al.

(District Court, W. D. New York. November 30, 1904.)

No. 587.

1. BANKRUPTS—DISCHARGE—BURDEN OF PROOF.
   On an application for a bankrupt's discharge the burden of proof is on the opposing creditors to establish the truth of the charge set out in the specification by clear and convincing evidence.

2. BANKRUPTCY—DISCHARGE—ACCOUNT BOOKS—MISLEADING ENTRIES.
   Where the books of a bankrupt firm fully disclosed a transaction alleged to be fraudulently entered, and though the entries were made to deceive general creditors they were not made with an intent to falsify the books, which were kept by a bookkeeper, such entries were insufficient to bar a discharge in bankruptcy of the member of the firm responsible for the entry.

3. SAME—DISCLOSURE OF ASSETS—FALSE OATH—INTENT.
   Where a bankrupt firm did not anticipate any reversion in certain lumber transferred to a creditor, and one of the partners testified that the firm was morally certain that the creditor would not realize near the amount of the firm's debt, such partner's oath to the schedules, omitting such reversionary interest, was insufficient to bar his discharge.

Crangle & Burke, for trustee.
H. G. Richardson, for bankrupt Howard A. Hamilton.

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 720.

HAZEL, District Judge. Specifications filed on behalf of the trustee in opposition to the discharge of the bankrupts herein were referred to a special master, who found that the discharge of Howard A. Hamilton, one of the firm of the Hamilton Door Manufacturing Company, should be denied on account of the bankrupts' failure to keep the books of account required by the bankruptcy act. This motion is for confirmation of such decision. The discharge is opposed on the ground that false books of account were kept by crediting an unsecured creditor with having paid freight, amounting to $787.22 on a consignment of lumber, when in fact the freight was paid by the bankrupts; also with having made a false oath, prohibited by sections 14b and 29b, Bankr. Act July 1, 1898, c. 541, 30 Stat. 550, 554 [U. S. Comp. St. 1901, pp. 3427, 3433].

The questions presented are: (1) Whether the bankrupt Hamilton, with fraudulent intent to conceal the financial condition of the copartnership, of which he was a member, and in contemplation of bankruptcy, failed to keep books of account from which its true financial condition might be ascertained; and (2) whether the bankrupts made false oaths in the bankruptcy proceeding, in that they willfully and fraudulently omitted from the partnership "Schedule B" certain material assets, namely, a contingent remainder in six cars of lumber transferred to one A. J. De Laplante, and in one car of lumber transferred to A. J. Walsh, in trust to pay certain indebtedness of the said bankrupts. The value of the asserted contingent interest is stated to be $386.08. It is conceded that at the time the certain entries here involved were made on the books of the firm the bankrupts were unquestionably insolvent, and that such entries were preferential in their character. This concession necessitates a brief statement of the facts. On April 17, 1901, Hamilton entered into an arrangement with A. J. De Laplante, representing the firm of R. Laidlaw Lumber Company, creditor in the amount of $807.46, by which such creditor was to advance $1,600 to the bankrupts, and take six cars of lumber consigned to the bankrupts at Middleport, N. Y., upon which the freight was unpaid, and which the railroad company refused to deliver before payment. It was arranged that upon the sale thereof De Laplante was to apply the proceeds thereof to the freight advanced and to the unsecured debt of his firm. The books of the bankrupts show that De Laplante paid the sum of $2,387.22, receiving a credit on the books of $1,600 cash and $787.22 for freight paid. The account, therefore, is untrue, in that it credits the transferees of the lumber with having actually paid a greater sum than was received. The bankrupt's right to a discharge prior to the amendatory act of 1903 must depend upon the question whether there was an intent to conceal the true financial condition of the firm of which he was a member, and if such concealment was in contemplation of bankruptcy. The offense, it will be seen, combines two essential elements. The proofs show that the true condition of the bankrupts was ascertainable from an examination of the books; that the entries therein fully disclosed the transaction between the bankrupts and the Laidlaw Lumber Company, including the pay-

ment of the freight by the bankrupts themselves. This point is practically admitted in the brief of the opposing creditors. The bankrupt contends that the entries were a mistake, but fails to make any reasonable explanation of how they arose. Indisputably, through his efforts an unlawful preference within the meaning of the bankrupt act was created, and obviously such was the intention. That it was his intention, however, to falsify the books, which were kept by a bookkeeper, with the object of concealing the true financial condition of the partnership, does not satisfactorily appear. The evidence on this point is thought to fall short of establishing the conclusion of the special master. As already stated, the sale of the lumber in cars was entered in the firm books, and the excessive credit noted by the bookkeeper. Apparently the entries were made solely to deceive the general creditors into the belief that an ordinary sale of lumber had been made to an unsecured creditor. Such method of bookkeeping, however reprehensible, is not made a sufficient ground for denying a discharge to the applicant. In re Steed et al. (D. C.) 107 Fed. 682. There were no series of false entries to indicate a purpose by the bankrupts to conceal their true condition. Hence it is not to be presumed from the untrue accounts contained in the books, namely, those of De Laplante and Walsh, both of which were in the interest of the R. Laidlaw Lumber Company, that any intention was in the minds of the partners other than to create an unlawful preference, for which relief has already been had in a proper action at the instance of the trustee. The burden of proof is upon the opposing creditors to establish by clear and convincing evidence that the charge set out in the specification is true. In re Howden (D. C.) 111 Fed. 723; In re Gaylord (D. C.) 106 Fed. 833; In re Corn (D. C.) 106 Fed. 143. This they have failed to do. The discharges should not be refused on suspicious appearances and mere surmises, where proof is lacking. Moreover, it does not clearly appear from the evidence which of the partners gave instructions for the making of the untrue entries. The bookkeeper testifies that he does not clearly remember whether it was Hamilton or Hogg. The bankrupt Hamilton testifies that he did not give any specific instructions to the bookkeeper to make the objectionable entries. In explanation of them, he stated that he informed the bookkeeper of the transaction, who thereupon made the entries on the assumption that he knew how they should properly be made. In this connection it may be noted that the specifications were withdrawn by the opposing creditors as to the bankrupts Hogg and Cramer, members of the copartnership, and continued against Hamilton, on the theory that he was the senior member of the firm and in charge of the office, and more directly responsible for the transaction referred to.

The objection charging the bankrupt with having made a false oath is not sufficiently sustained by the evidence. The record does not, as claimed by the opposing creditors, establish that the arrangement between the Laidlaw Lumber Company and Hamilton consisted of a secret trust for the benefit of the bankrupt, or a

fraudulent concealment of property from his trustee. It must be conceded that, if Hamilton did not anticipate any reversion in the lumber transferred, there was no intent to violate the statute. Upon this point he testified as follows:

"Q. There is nothing to show on the books, Mr. Hamilton, that there was to be any accounting made by these people? A. No, and it wasn't understood only between ourselves that there was to be any accounting. * * * Q. You didn't include in your schedules any of this money that was coming from any of these parties? A. We didn't anticipate that there would be any money coming. In fact, we were morally certain there would not. I don't believe that McLeod, or McBierney, or Laidlaw will come out anywheres near what they have got to pay for us. Q. Notwithstanding the fact that it was billed to them at such a low price? A. No, sir; that is my opinion."

The testimony taken on examination of the bankrupts before the referee, considered in its entirety, leaves the question of remaining equities in the lumber transferred indefinite and uncertain. The evidence of Hamilton on that subject may have been evasive and disingenuous, but it has been held that testimony of that character is not a ground for denying a discharge. In re Gaylord, 112 Fed. 668, 50 C. C. A. 415; In re Leslie (D. C.) 119 Fed. 406. The authorities uniformly hold that the objection of making a false oath in bankruptcy proceedings must be established by clear and convincing evidence. In re Gaylord, supra; In re Ferris (D. C.) 105 Fed. 356; In re Fitchard (D. C.) 103 Fed. 742. This, as has been stated, the opposing creditors have failed to do, and therefore it is thought that the bankrupt Hamilton is entitled to a discharge.