## In re GOLDBERG.

### (District Court, D. Massachusetts. March 21, 1919.)

### No. 24525.

1. BANKRUPTCY ⚙︎407(5)—DISCHARGE—DENIAL—FALSE FINANCIAL STATE-MENT.

That discharge of bankrupt may be denied on the ground of substantially false statement on which credit was obtained, there must have been intentional dishonesty, he must have known the statement was false, and intended to deceive by it.

2. BANKRUPTCY ⚙︎414(1) — PROCEEDING FOR DISCHARGE — PRESUMPTION — KNOWLEDGE AND MEANING.

Relative to refusal of discharge because of false statement of bankrupt on which he obtained credit, that persons know what they sign and mean what they say is a presumption of fact, which, though not conclusive, is, as applied to business men, one of the weightiest known to the law.

3. BANKRUPTCY ⚙︎415(3)—APPLICATION FOR DISCHARGE—CONCLUSION OF REFEREE—REVIEW BY JUDGE.

Though "assessed value," which bankrupt purported to give in a statement on which he obtained credit from a trust company, is a definite thing, well understood by all business men, conclusion of referee, on application for and objection to discharge of bankrupt, that he did not intend to deceive by his statement, cannot be said to be plainly erroneous, and so must be accepted; his previous statements, similar in character, covering several years, and, so far as appears, not used in a fraudulent way, being in evidence, and he testifying that he had always put in the properties at what they cost him, and that this and their values were known to the treasurer of the company.

In Bankruptcy. In the matter of William Goldberg, bankrupt. On application for a discharge. Discharge granted.

Phipps, Durgin & Cook, of Boston, Mass., for objecting creditor.
M. J. Sawyer, of Boston, Mass., for bankrupt.

MORTON, District Judge. The specifications of objection now relied on are based upon an alleged false statement in writing made by the bankrupt to the objecting creditor, the Liberty Trust Company, for the purpose of obtaining credit. It was on a printed blank furnished by the trust company. The portions alleged to be false relate to real estate only. The language is "real estate (assessed value), as follows." Then follow values for three different parcels, which admittedly greatly exceeded the assessed values.

The evidence is not reported, except the statement in question and certain similar statements which preceded it; and the findings of the learned referee must be accepted, unless, upon the face of his report, when read in connection with the statements referred to, they appear to be plainly wrong.

[1] That the statement was made, as asserted by the objecting creditor, and was substantially false, is beyond question. It is settled that intentional dishonesty is a necessary element in the objection relied on.

In re O'Callaghan (D. C.) 29 Am. Bankr. Rep. 304, 199 Fed. 662; Collier on Bankruptcy (10th Ed.) p. 353 a; Remington on Bankruptcy (2d Ed.) § 2560. The issue is whether the bankrupt knew that the statement was false and intended to deceive by it. The learned referee has found that he did not.

[2] There is a presumption that persons know what they sign and mean what they say. The presumption is one of fact, and, of course, is not conclusive. As applied to business men, it is, however, one of the weightiest presumptions known to the law, and one of the most important. This case turns on whether the learned referee gave due weight to it.

[3] "Assessed value" is a definite thing, well understood by all business men. It seems difficult to believe that a misstatement concerning it can have been innocent and in good faith. The learned referee suggests that the words are in small type; but an inspection of the statement shows that they are in exactly the same type as the rest of it. Aside from the previous statements and the testimony concerning them, I should have no hesitation in saying that the learned referee was plainly wrong in his conclusion and had overvalued protestations of innocence and good faith by the bankrupt.

The previous statements, similar in character, were admissible as bearing upon the alleged fraudulent intent. They covered several years, and, so far as appears, were not used in any fraudulent way. The bankrupt testified, according to the certificate, that the treasurer of the Trust Company knew that the figures as to real estate contained in those statements, although purporting to be assessed values, really represented what the bankrupt had paid for the properties:

"He [the bankrupt] testified that he had always put in these properties at their value, or what they cost him, and that their values were known to Mr. Sturgis [the treasurer] or the bank." Report of Referee, p. 2.

In the present state of the record, this testimony must be taken as true. On that assumption it cannot be said that the conclusions of the learned referee were plainly erroneous.

It follows that his report must be confirmed, and the discharge granted.