### In re SCHIFF et al.

(District Court, S. D. New York. May 21, 1925.)

#### No. 34796.

**1. Bankruptcy ⟨⟩409(1)—Rule as to effect of careless bookkeeping methods on bankrupt's right to discharge, stated.**

Careless method of bookkeeping is not ground for denial of discharge of bankrupts unless books disclose an intent on part of bankrupts to conceal their financial condition, and bolster up fictitious accounts entered in the schedules, and have been so falsely kept that the true financial condition of bankrupts cannot be ascertained by competent accountant.

**2. Bankruptcy ⟨⟩414(3)—Evidence held insufficient to sustain objections to discharge for failure to keep proper books and listing of fictitious debts.**

Evidence *held* insufficient to sustain specifications of objection to bankrupts' discharge on ground of failure to keep proper books and listing of fictitious debts.

**3. Bankruptcy ⟨⟩414(3)—Greater degree of proof required where ground of objection depends on offense for which bankrupt may be punished criminally.**

Where ground of objection to discharge of bankrupts depends on an offense for which bankrupt may be punished criminally, a greater degree of proof should be required.

In Bankruptcy. In the matter of Isaac O. Schiff and Joseph Schiff, individually and as copartners trading under the firm name and style of Schiff Bros. On motion to con-

firm special master's report sustaining specifications of objection to bankrupts' discharge. Specifications dismissed, and bankrupts discharged.

Douglas Newman and Charles Eno, both of New York City, for objecting creditors.

Percival Jackson, of New York City (Marcus Helfand, of New York City, of counsel), for bankrupts.

WINSLOW, District Judge. This is a motion to confirm the special master's report sustaining certain specifications of objection to the bankrupt's discharge relating to the failure of the bankrupt firm to keep proper books, and the listing of fictitious debts in the schedules. Between the dates of December 12, 1923, and February 18, 1924, various specifications of objection and amended and supplemental specifications of objection were filed to the discharge of the bankrupts. They were referred to the referee in bankruptcy as special master to take the testimony and report thereon. The special master has had numerous hearings, at which witnesses appeared and documentary evidence was received, including the books kept by the bankrupts.

All of the specifications were dismissed as not proven, or because they were insufficient in law, except certain specifications filed on behalf of Simon Gulack—No. 1, failure to keep proper books, and No. 3 as to the listing of fictitious debts, only—and also similar specifications described as amended and supplemental specifications of Amoskeag Manufacturing Company and Lawrence & Company, described as "First" (subdivision b) and "Fourth." These specifications are sustained by the learned special master, and by reason thereof the special master reports that the application for discharge of the bankrupts, individually and as copartners doing business under the firm name and style of Schiff Bros., should be denied.

This motion for confirmation now brings up for consideration the specifications referred to, sustained by the special master. The attorney for the bankrupts asks that the specifications be overruled and dismissed, and that the bankrupts be duly discharged.

I am of the opinion that the conclusion of the special master overruling all objections, except the ones referred to, is amply justified by the record. There therefore remains for consideration only the question of the propriety of the master's conclusion as to the specifications sustained. These specifications, while filed by different creditors, are,

5 F.(2d)—33

in substance, the same and resolve themselves into two groups.

Specification No. 1 by the creditor Simon Gulack, and specification fourth filed by other creditors, opposing the discharge of the bankrupts, allege that the bankrupts failed to keep proper books of account.

No. 3 of the Gulack specifications and first (subdivision b) of the other creditors allege that the bankrupts made a false oath as to the bankrupts' schedules in that the bankrupts included therein fictitious debts, (1) to Jennie Schiff, and (2) to Yetta Juliber.

In view of the court's agreement with the learned special master with regard to all specifications, except those now referred to, it is unnecessary to consider the record, except as to these. The objections of specification are so related that for practical purposes they are one; that is to say, the schedules filed by the bankrupt set forth, among others, the following alleged fictitious debts, which appear on the books of Schiff Bros.:

Jennie Schiff, wife of Joseph Schiff, bankrupt, $31,000.

Yetta Juliber, sister-in-law of bankrupt, $10,029.70.

No proof of these debts was filed, and the time for such filing has expired. But the books show entries thereon of such debts appearing in January, 1923.

The witness Joseph Schiff testified before the special master, in regard to the debt alleged to be due Yetta Juliber, that he received this amount from her (his sister-in-law) in cash and checks; that this money represented estate and insurance of upwards of $10,000, received from her late husband's estate; that, after investments by permission of Yetta Juliber, he later loaned it to the firm from time to time. There is other corroborating evidence. The books would seem to show that original entries were made therein, apparently related to this fund, not as a loan from Yetta Juliber, however, but from Joseph Schiff. The firm's books show that the account of Juliber was set up on January 21, 1923, by the transfer of items aggregating $10,029.70 from the Jennie Schiff account, which, in turn, had been transferred from the ledger account of Joseph Schiff. In like manner, documentary and other evidence is presented to substantiate loans from Jennie Schiff to Schiff Bros., which supposed loans were entered in the account of Joseph Schiff. These items were set up on the books by similar transfers. It is these transfers on the books to which, apparently, the special master has directed his attention in sustaining the specifications

of objection that proper books of account were not kept and fictitious debts were listed and sworn to. The other objections based upon general allegations were overruled and dismissed; so that it becomes important to direct attention to these alleged debts.

[1] As stated, no proofs of claim of these debts have been filed, and it may be debatable whether, as a matter of law, they could be proven. The accountant, however, apparently ascertained, without difficulty, the status of the account from the books themselves. The making of the entries referred to and their transfer indicate an extremely careless and hazardous method of bookkeeping, but the question to be determined is whether these books disclose an intent on the part of the bankrupts to conceal their financial condition and bolster up fictitious accounts which were entered in the schedules. In re Hamilton (D. C.) 133 F. 823. Bookkeeping methods alone do not disclose such intent, unless there be, in addition, circumstances or proof from which the presumption of evil intent may be drawn. In re Marcus v. Scherr, 27 Am. Bankr. Rep. 164, 192 F. 743.

The books must have been so falsely kept that the true financial condition of the firm could not be ascertained therefrom. If a competent accountant, from an examination of the books produced in the hands of the trustee, determines the true condition of the debtor, this is sufficient to justify his discharge. Matter of Acomb, 33 Am. Bankr. Rep. 854.

[2, 3] While the testimony of the bankrupts before the special master is far from satisfactory, I do not think that the proof adduced is sufficient to warrant the conclusion that the books were falsified, or that the schedules, including the two particular accounts under consideration, were intentionally falsified, or that perjury was committed. Where the ground of objection depends upon an offense for which the bankrupt may be punished criminally, as in this case, a greater degree of proof should be required. In re Gaylord, 112 F. 668, 50 C. C. A. 415. The primary object of inclusion in schedules of every possible claim is to bar such listed persons from future legal action. If a bankrupt should omit claims where the liability is doubtful, he subjects himself to the possibility of enforcement of such claims in the future. It is true that a bankrupt might, on the other hand, include in his schedules colorable or fictitious claims, thus depleting the fund and allowing friendly fraudulent claimants to participate. In the present instance, it is conceded that the questioned claims were not proven so as to participate in a dividend, and any benefit which otherwise might have accrued to such claimants, if filed and if susceptible of proof, would have been relatively small.

The report of the special master is most complete, and I am loath to disagree with him in his conclusion. After careful consideration, however, while there is much to justly criticize in the bankrupts' conduct, I am of the opinion that the specifications of objection, to which special reference is herein directed, have not been sustained by that burden of proof required in the premises.

The specifications will be dismissed, and the bankrupts' discharge granted.