### In re RUSSELL.
### No. 3503.

District Court, D. New Hampshire.
May 14, 1931.

Burt R. Cooper, of Rochester, N. H., for bankrupt.

E. P. Spinney, of North Berwick, Me., and Ralph W. Goss, of Berwick, Me., for objecting creditors.

MORRIS, District Judge.

Javan M. Russell of Somersworth, N. H., was adjudged a bankrupt upon his voluntary petition on August 9, 1929. May 19, 1930, he made application for his discharge which was duly published and made returnable before the court on July 1, 1930. On June 27, 1930, various creditors filed objections to the bankrupt's discharge specifications of which were filed July 10, 1930. The matter came on for hearing before the court on September 26, 1930, and at the suggestion of counsel, after the day's hearing, was continued for further evidence. The matter came on again for hearing before the court January 28, 1931, since which time counsel have prepared and filed written arguments.

The objections to the discharge are eight in number, all of which appear to be embodied in the specifications of the North Berwick National Bank.

### Objection No. 1.

■ The first objection alleges that the bankrupt in an attempt to defraud his creditors failed to make true statements of his property and purposely omitted from his assets his automobile and a considerable amount of household goods and that in so doing he made a material false statement in writing respecting his assets and property and made a false oath thereto.

With reference to this objection I find as follows: At the time of the adjudication the bankrupt owned a Hudson sedan which he did not list in his schedule of assets. At a meeting of the creditors, George E. Varney of Somersworth was elected trustee and three appraisers were appointed to make an appraisal of the bankrupt's property. When the appraisal was being made, the trustee knowing that Russell had an automobile called his attention to the fact that he had not listed it in his schedule. The bankrupt admitted that he owned an automobile; that it was left out and should have been included. An amendment was thereafter made to the original schedule including the automobile, which amendment was filed with Referee Clifford.

The bankrupt's explanation as to the automobile is that when it occurred to him that he had an automobile in his barn he reported it to the trustee; that he did not intentionally omit it, that he did not conceal it, and that its omission was a mistake.

I find that there was no intention on the part of the bankrupt to omit the automobile from his schedule of property, but that the omission was inadvertent, as he must have been aware of the fact that his ownership of it was well known to his creditors and neighbors.

I find that in signing and making oath to his schedules with the automobile omitted, he did not intentionally take a false oath within the meaning of section 14 of the Bankruptcy Act (11 USCA § 32).

■ It is further alleged in creditors' objection No. 1 that the bankrupt, intending to defraud his creditors, falsely and fraudulently set forth in his schedule his household goods at the value of $100, and claimed an exemption as to all of them; whereas, in fact he well knew his household goods were very valuable and worth many hundreds of dollars and not exempt as claimed.

With reference to the furniture, I find as a fact that the bankrupt listed in his schedule of assets $100 worth of furniture and claimed an exemption of all of it. When the appraisers were going over the other property, the trustee asked about the furniture and was given to understand that there was no furniture in the house belonging to Mr. Russell with the exception of a desk and chair or two in his office and that they were of nominal value so no appraisal of furniture was made. Later, the trustee, knowing that Mr. Russell lived in a nice residence and maintained a nice establishment, made further inquiry and investigation with reference to his furniture and found that Mr. Russell did own more than had been listed, and as a result of the investigation a further amendment listing a considerable number of articles totaling $576.25 in value was made to the bankrupt's

schedule and filed January 7, 1930. The bankrupt when asked about his furniture by his counsel at the hearing before the court answered: "The question of furniture was raised in your office and my answer was this: I have practically no furniture that I purchased. The furniture we are using was largely given as a wedding present at the time we were married and recently by bequest to my wife from her mother."

"Q. What was your honest judgment at that time as to the value of your furniture if you gave it a thought with respect to the exemption? A. I wasn't impressed that there was an item that called for a very strict accounting. I had reported that I had practically no furniture and that seemed to counsel to justify making no entry of it."

The fact that the furniture was mentioned and valued at $100 convinces the court that when the bankrupt was asked concerning the furniture he knew that he owned more than $100 worth and he knew that $100 worth was exempt and therefore reported that amount. This was a false representation as to his assets. I cannot find that it was other than intentional, and unless bankrupt's subsequent conduct in permitting and assisting the trustee in separating bankrupt's own furniture from that of his wife purges him from the result of his prior conduct, his discharge must be denied upon this ground. Whether or not bankrupt's conduct will be excused will be taken up later in this rescript.

▮ Other grounds argued by creditors' counsel relating to the Champlin preferred stock, Butler liability, coal, and testimony relating to Gowell lumber deals, are not considered because not specifically alleged in creditors' specifications of objections. To refuse bankrupt a discharge on grounds not covered by specifications of objections would be error. In re Feinsilver (C. C. A.) 24 F.(2d) 408.

### Objection No. 2.

▮ Objection No. 2 alleges that on March 30, 1929, said bankrupt applied to the North Berwick National Bank for extension and renewal of credit on his note and did then and there obtain an extension and renewal of credit from the bank on his note by making on said March 30, 1929, a materially false statement in writing subscribed and sworn to by him respecting his financial condition.

I find with reference thereto that the bankrupt was owing the Berwick Bank two notes aggregating $4,000. Jarvan N. Russell, the bankrupt, was the maker, and Edward F. Gowell was the payee and indorser. The notes had been renewed from time to time and there was a request made for a further renewal. On or about March 30, 1929, the bank sent J. M. Russell a blank form upon which to make return of a financial statement. The statement with the exception of the address at the top and jurat at the bottom is in the handwriting of the bankrupt and was returned to the bank on March 30, 1929. It shows a net worth of $95,392, as follows:

#### Assets

| | |
|---|---:|
| Cash on hand and in bank | 318.00 |
| Notes and accounts receivable | 20,955.00 |
| Real Estate | 25,400.00 |
| Other Property | 108,853.00 |
| Total Assets | 155,526.00 |

#### Liabilities

| | |
|---|---:|
| Chattel Mortgages on Lumber | 8,000.00 |
| Notes payable to banks | 5,000.00 |
| Notes payable to others | 47,134.00 |
| Total Liabilities | 60,134.00 |
| Net Worth | 95,392.00 |

The minutes of the meeting of the directors on the last above-mentioned date read as follows:

"March 30, 1929, Directors meeting.

"Present: D. A. Hurd, George V. Putnam.

"Notes: numbers 6800 and 6807 inclusive, read and approved. Voted to give a note for $1500, of Jarvan M. Russell payable to Mr. Gowell to our attorney E. P. Spinney for collection. Extension on receipt of statement from Mr. Russell allowed on the $2500 note.

"Attest: Leslie M. Johnson, Secy."

I find that by reason of having received the favorable financial statement signed by Mr. Russell the bank extended the time for payment of the $2,500 note.

I further find that said financial statement was false at the time it was given and that the bankrupt was actually insolvent at the time.

Four months later, on August 1, 1929, at a meeting with the creditors the bankrupt

filed a statement of his assets and liabilities showing:

Direct liabilities ................ 34,456.00
Indirect liabilities .............. 60,750.00

Total ..................... 96,206.00
Assets ....................... 76,000.00

Liabilities over Assets....... 18,206.00

A comparison of these exhibits shows that from a reported net worth of $95,392, on March 30, 1929, the bankrupt's finances had shrunk from a net liability of $18,206, proving insolvency. Mr. Russell's explanation of the statement of March 30, 1929, is contained in the following abstract from his testimony:

"Q. Now there is evidence here, a statement which purports to be a statement of assets and liabilities, Objectors Ex 1, which is produced by the Berwick bank. What do you recall with reference to that statement? A. That statement was made up in my office and was signed by me.

"Q. And it is a statement of what? A. Is a statement of my assets as of January 1, my inventory of January 1, 1929.

"Q. Then it is a copy of what in effect? A. Copy of my filed inventory of 1929, except as the tabulation was changed to meet the requirements of this blank.

"Q. Did you carry in your inventory of that year any secondary obligations? A. No.

"Q. Did you understand that that statement as made up there contained any direction or request for information as to your secondary obligations? A. Why, I did not give that particular point consideration.

"Q. How did you happen to and to whom did you give that statement? A. The history of this statement if I should be allowed is this: I received a letter from the North Berwick National Bank asking for a financial statement with reference to the renewal of certain notes over there.

"Q. About when did that statement come according to your best recollection? A. It might have been in February perhaps. Perhaps not until the first of March. I did not pay any attention to the request and later another request similar came. I was not keen to send a statement to the bank at that time. Mr. Gowell came in and the matter came up in conversation. I don't know who broached it, and I told him that I could not make a statement that I could feel sure I had a right to make out that would do him any good. I finally said I would give him the statement

as of my inventory and he formulated it and I signed it.

"Q. Did you swear to that before him? A. I did not.

"Q. Did you ever hear again from the North Berwick Bank with respect to the statement or request for a statement or with regard to a renewal or extension of notes. A. No."

On August 12, 1929, the date when the petition in bankruptcy was filed, another set of figures appears as follows:

Total liabilities ................ 112,710.54
Total assets .................... 67,556.04
Liabilities above assets......... 45,154.50

The schedule has been amended by the addition of household furniture amounting to $576.25, and the bankrupt's Hudson appraised at $———.

Attached to the bankrupt's answer is a sheet purporting to be a reconciliation between the bankrupt's net assets as shown by his inventory of January 1, 1929, and the statement rendered creditors under date of August 9, 1929. This statement shows in part at least the disposition of bankrupt's assets and shrinkage during the intervening months, but it does not justify the bankrupt in making a false statement to the bank under the date of March 30, 1929.

From this statement and other evidence in the case I find that $53,125 of stock and other securities included in the statement of March 30, 1929, was pledged as collateral security for either direct or secondary liabilities, which fact must have been known to Russell. He must also have known that any statement which included his pledged stock in his assets without listing the liabilities for which they were pledged did not reflect his true financial condition. It appears that these stocks were forfeited and sold prior to August 9, 1929. Russell must have known that Gowell's financial condition was unsound. He testified, however, that he did not know the extent to which he was liable on Gowell's accommodation paper. I find that is true. He had signed many accommodation notes with Gowell, both original and renewals, and had failed to keep an account of them. Gowell's name also appears on some of Russell's notes.

The statement of March 30, 1929, made up from Russell's inventory of January 1 of that year, was not a true statement of Russell's financial condition, and this he must have known, although he did not know the

full extent of his secondary liabilities. The two notes owed the North Berwick National Bank were Gowell's notes given him by Russell upon which Gowell received the money. They had been renewed several times by interest payments.

It does not appear that the bank gained or lost anything by the renewal of the $2,500 note. On the same day it voted to place the $1,500 note in an attorney's hands for collection, and suit thereon was brought in the Supreme Judicial Court for York County, Maine, on the 10th day of April, 1929, and an attachment made of all of Russell's interest in real estate in the state of Maine. The attachment was released by the adjudication in bankruptcy within four months. There is no reason to believe that the bank would have stood any better with the $2,500 note if the time had not been extended. Its status probably would have been the same as the $1,500 note which was not extended.

While it is true the bank suffered no loss by the extension of the $2,500 note, the test is, not what the creditor lost, but what the debtor received. In this case Russell obtained by means of his false statement an extension on his note which may have been under some circumstances a distinct advantage to him— in other words, something of value, a property right, an exemption from process on the note during the period of extension. Samet v. Farmers' & Merchants' Nat. Bank (C. C. A.) 247 F. 669; In re Goldberg (D. C.) 256 F. 541.

I hold that the facts bring the case within the provisions of section 14b (3) of the Bankruptcy Act, 11 USCA § 32(b) (3).

### Objection No. 3.

 It is alleged that the bankrupt, in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or record from which his financial condition and business transactions might be ascertained.

The bankrupt was engaged in the lumber business purchasing lots, operating them, and disposing of the manufactured product. From the testimony of the bankrupt and the several exhibits introduced at the hearing, I find that the bankrupt kept his yearly inventory made up the 1st of January or soon thereafter upon the flyleaf of his check book. This had been his practice for several years prior to bankruptcy. His daily transactions for each lot were kept in small memorandum books which served as day books. Seven of these were introduced in evidence covering the period since 1926. From these books his transactions with each lot were posted on a loose-leaf ledger (Bankrupt's Exhibit G) covering a period since 1927. Four check books were also introduced in evidence covering the period from 1923 down to the date of bankruptcy.

While the bankrupt's method of keeping his accounts was rather crude, it was his method and, with the exception of the failure to keep an account of his secondary liabilities upon the Gowell notes, was sufficient for his purposes.

I cannot find that the bankrupt, in contemplation of bankruptcy, destroyed, mutilated, falsified, concealed, or failed to keep books of account or records in which his financial condition and business transactions might be ascertained. Crude or careless method of keeping books, unaccompanied with any intent to conceal bankrupt's true financial condition, is not sufficient ground for denial of a discharge. In re Schiff (D. C.) 5 F.(2d) 512.

Creditors' objection No. 3 is not sustained.

### Objection No. 4.

 It is alleged that the bankrupt failed to explain satisfactorily his alleged losses of assets or his deficiency of assets to meet his liabilities; that the said bankrupt, when he rendered his statement under oath to said North Berwick National Bank showing net assets of $95,392, knew or ought to have known what his property consisted of and its value, and he knew, or ought to have known, what his direct liabilities were, and he knew, or ought to have known, what his indirect liabilities were, because under date of March, 1928, a list of said bankrupt's indirect liabilities was furnished him.

I find from testimony of the bankrupt given before the referee in bankruptcy and introduced in evidence before the court, that in March, 1928, Mr. Russell obtained from Mr. Gowell a list of accommodation notes outstanding, but that it was not a full and complete list, as it did not include the Lord, Toothacker, Stevens, Bickford, and Spence notes, aggregating more than $33,000. The difference in assets between the inventory of January 1, 1929, and the statement to the bank of March 30, 1929, is in a large measure due to the fact that the bankrupt did not take into consideration his secondary liabilities, some of which were unknown to him, and did not mention the fact that most of his securities were pledged either for his own or Gowell's debts.

There was also a large depreciation by reason of revaluation of assets. This diminution of assets and increase of liabilities is fairly explained in schedule A of bankrupt's answer.

But, assuming the bankrupt has failed to make an explanation satisfactory to his objecting creditors, the evidence falls short of showing any intent to conceal any assets mentioned in objection No. 4 and the subjects have been treated under objection 2 and 3.

Creditors' objection No. 4 is not sustained.

### Objection No. 5.

■ It is alleged that the bankrupt within four months before his adjudication preferred some of his creditors and made preferential payments as follows:

| | |
|---|---|
| June 17, 1929, J. F. Hall......... | 1181.25 |
| June 29, 1929, A. A. Gerrish...... | 208.38 |
| Hiram Perkins..... | 136.92 |

This objection does not set forth legal grounds for refusing a discharge. Bankruptcy Act, § 14 (11 USCA § 32). In re Wood (D. C.) 283 F. 565.

### Objection No. 6.

It is alleged that the bankrupt after filing his petition in bankruptcy withheld from the trustee such books, papers, documents, or property affecting or relating to his property affairs as would explain and show the individual or separate list of property or securities making up his assets.

This objection is not sustained. The referee has reported otherwise.

### Objection No. 7.

It is alleged that in contemplation of bankruptcy the bankrupt concealed assets and did not keep proper books of account from which his financial condition and business transactions might be ascertained.

Bankruptcy Act, § 14b (2), 11 USCA § 32(b) (2), provides that if the bankrupt, with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account, or records from which such condition might be ascertained, he will be refused a discharge.

I find neither intent, destruction, nor concealment. Creditors' contention is not sustained. Taback v. Arai (C. C. A.) 21 F.(2d) 161.

### Objection No. 8.

■ It is alleged that the bankrupt subsequent to the first day of the twelve months immediately preceding the filing of his petition, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, some of his property and assets with intent to hinder, delay, or defraud his creditors.

The basis of this allegation appears to have been a transaction with the Sanford National Bank. The bank held Russell's securities and a mortgage given by Gowell to Russell as collateral for various notes owed the bank. The securities were called and were about to be sold. Mrs. Russell who has property in her own right raised $11,000, and redeemed the securities. The bank transferred the collateral to Edith M. Russell, wife of the bankrupt, on July 15, 1929. This transaction was open and above board and done for the purpose of saving any equity there was in the collateral. Said equity is listed in the bankrupt's schedule of assets at $12,000. Counsel for Mrs. Russell signified to the referee and to the court in this proceeding her willingness to transfer to the trustee all of said collateral upon the payment to her of the money expended to redeem it.

I cannot find that this transaction was entered into with intent to hinder, delay, or defraud Russell's creditors.

Objection No. 8 is not sustained.

■ Adverting again to bankrupt's failure to list his furniture in his schedule of assets, not only was it called to his attention when his schedules were being prepared, but again when an appraisal of his property was being made. On each occasion he represented his furniture as of nominal value. It was not until pressure had been brought to bear on him by the trustee that the amendment to the schedules adding $576.25 to his assets was made. His second denial characterized his first. To justify the omission by a bankrupt of property from his schedules on the ground that he acted on advice of counsel, it must be shown that he fully and fairly stated the facts to the counsel and acted on his opinion as a matter of law only. In re Breitling (C. C. A.) 133 F. 146.

Objection No. 1 is sustained as to the furniture.

Objection No. 2 as to the financial statement rendered to the bank March 30, 1929, is sustained. Cleland v. Iowa Loan & Trust Co. (C. C. A.) 260 F. 653.

Bankrupt's discharge is denied. No costs are allowed to either party.