## NIX v. STERNBERG.

### No. 8549.

Circuit Court of Appeals, Eighth Circuit.

Feb. 6, 1930.

A. M. Dobbs, of Ft. Smith, Ark., for appellant.

Joseph R. Brown, of Ft. Smith, Ark. (James B. McDonough, Jr., of Ft. Smith, Ark., on the brief), for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and DEWEY, District Judge.

BOOTH, Circuit Judge.

This is an appeal from an order denying a discharge to Jeff P. Nix, who was adjudicated a bankrupt February 17, 1928, and who filed a petition for discharge March 23, 1928. There were three specifications of objections filed to the discharge by the trustee, who was authorized by the creditors to make such objections: First, that the bankrupt had failed to turn over to the trustee any books from which his financial condition could be ascertained; second, that the bankrupt had transferred property within four months immediately preceding the filing of his petition, for the purpose of hindering and delaying his creditors; and, third, that objections had been filed to all claims of creditors, and that the court was without jurisdiction to grant a discharge or deny the same until it should be determined whether there were any valid claims against the bankrupt estate. These same objections were adopted by a creditor who also appeared in opposition to the discharge. The court overruled the second ground; the third was abandoned; the first was sustained.

612

■ It is claimed by appellant that the first ground was not sufficiently stated; that it merely alleged a failure to turn over books, whereas the statute authorizes a denial of discharge for failure to *keep* books. But the form of the objection was treated by all parties concerned in the court below as sufficient, and was treated by the court also as sufficient; and the question taken up and decided by the court was whether the bankrupt had kept proper books from which his financial condition could be ascertained. Furthermore, there is no assignment of error covering insufficiency of the objection. We hold that the point of procedure is not well taken, and turn to the merits.

■ The following excerpt is taken from the narrative statement of the bankrupt's testimony: "The bankrupt's principal business was buying and trading for lots and building houses on them and taking out loans and selling his equities, most generally trading his equities; all the transactions were done by taking a deed and making a mortgage and filing them for record, and he made no attempt to keep a record of these transactions except as was shown by the deeds and mortgages filed for record; that his schedule, showing a great number of lots and blocks and the indebtedness due and the estimated value, was made up by him from his memory and knowledge of values, and exhibited to the court his notes, which shows practically the same as the schedule heretofore introduced shows, and he kept no books from which he made out the schedules, but made out those schedules from the memoranda shown in these notes, and these notes were made out from memory, and a few of them were verified by going to the records of the deeds."

The bankrupt had been in business since 1920, and had never kept any books of his transactions other than a pocket memorandum book. At the time of his adjudication his liabilities amounted to $272,000, and his assets were uncertain in amount. The bankrupt testified that he was able to tell from memory about every transaction since 1922 if he was asked. The only book turned over by the bankrupt to the trustee was an account book in which pages 21 to 31 and 36 to 43 were missing. There was testimony that the pages were eliminated long before the bankruptcy. The financial condition of the bankrupt could not be ascertained from this book.

The relevant statute (Act of May 27, 1926, § 6, 44 Stat. 663, 11 USCA § 32) provides as follows: "(b) The judge shall * * * discharge the applicant, unless he has * * * (2) destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case."

It is to be noted that this amendatory statute omits the words, "with intent to conceal his financial condition," which were contained in the former statute, in connection with the provision relating to the failure to keep books. But in the amendatory statute are added the following words: "Unless the court deem such failure or acts to have been justified, under all the circumstances of the case." The burden of proving "intent to conceal" is taken from the objecting creditors or the trustee; and the burden of proving justification is placed upon the bankrupt. These changes, in our opinion, are significant and indicate a purpose on the part of Congress to lodge with the bankruptcy court a reasonably wide judicial discretion in respect to the matter of denying a discharge for failure to keep books.

The court in the case at bar held that the bankrupt had not complied with the statute, and said in reference to the failure to keep books: "The book produced shows mutilation. The explanation given by the Bankrupt is far from satisfactory. His financial transactions were large. He 'failed to keep books of account or records from which his financial condition and business transactions might be ascertained.' Such failure is not shown 'to have been justified under all the circumstances of the case.' The objection to bankrupt's discharge will therefore be sustained."

The evidence, in our opinion, was ample to sustain these findings.

The order denying the discharge is affirmed.