In re MILLER.

No. 6897.

District Court, D. Maryland.

Jan. 18, 1934.

Lawrence W. Hecht, of Baltimore, Md., for petitioner.

James E. Tippett, of Baltimore, Md., for bankrupt.

Herbert Levy, of Baltimore, Md., for objecting creditor.

WILLIAM C. COLEMAN, District Judge.

The question here presented is whether the bankrupt is entitled to a discharge. The specifications in opposition to the granting of a discharge, filed by the receiver of a creditor bank, are four in number, but may be summarized as (1) relating to the alleged fraudulent concealment of the facts respecting the true ownership of certain personal property; and (2) relating to the alleged failure on the part of the bankrupt to keep books of account or records from which his financial condition and business transactions might be ascertained.

It may be said at the outset that, as a result of the testimony which has been presented to the court, the evidence is not sufficient to warrant a finding that there was anything fraudulent in the conduct of the bankrupt with respect to personal property covered by the first specification; namely, certain household furniture. While the bankrupt appears to have treated this property, for tax purposes, as his own and not his wife's, nevertheless the explanation which he gave respecting his representation of his wife in such matters appears to be bona fide, and satisfies the court that she, and not her husband, was in fact the true owner of this property.

There thus remains for consideration only one question raised by the remaining specifications, namely, whether the bankrupt's failure to keep books of account or records is sufficient to warrant the refusal of a discharge to him.

The adjudication occurred June 10, 1932. For some eleven years prior thereto, the bankrupt, Hiram Sinclair Miller, had been manager for the Baltimore district of the Equitable Life Assurance Society. His average yearly income, including salary, during this period was approximately $25,000. The amount of insurance written under his management was large, and large sums of money were accustomed to pass through his hands. His liabilities approximate $74,000, while his assets do not exceed some $28,000. The number of his creditors is large, and he appears to have lived in an extravagant manner. He kept no books of account or records of any kind other than those disclosed by his personal check books and bank passbooks. Because of this fact, and because of the intermingling of his rather complicated personal transactions with his business transactions, by special order of this court, a certified public accountant was directed to make a com-

plete audit of his accounts in order that it might be determined whether or not there were sufficient records from which a reasonably accurate disclosure of the bankrupt's financial condition might be ascertained. The original hearing upon the specifications in opposition to the discharge was suspended until such audit might be completed. Thereupon the hearing was resumed and testimony taken in addition to that which had been adduced before the referee. This audit failed to disclose any additional books of account or records, with the result that identification of both receipts and disbursements was not possible in numerous instances. For example, for three or more years just prior to his adjudication, the bankrupt appears to have made each year, deposits in bank of approximately $15,000 which cannot be identified; and also to have made during that period annual withdrawals of approximately $7,000, which also are incapable of identification. In addition, during each of these years, there were withdrawals from his bank accounts of lesser amounts which the auditor could not identify. The bankrupt was afforded ample opportunity to explain his entire financial condition, but his testimony, both before the referee and the court, affords little clarification of the accountant's audit, on which the auditor and his assistants worked for approximately a month.

Section 14 of the Bankruptcy Act as amended by the Act of May 27, 1926, § 6 (11 USCA § 32 (b), in so far as it is pertinent to the present inquiry, provides as follows: "The judge shall hear the application for a discharge and such proofs and pleas as may be made in opposition thereto by the trustee or other parties in interest, at such time as will give the trustee or parties in interest a reasonable opportunity to be fully heard; and investigate the merits of the application and discharge the applicant, unless he has * * * (2) destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case: * * * Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this paragraph (b), would prevent his discharge in bankruptcy, then the burden of proving that he

has not committed any of such acts shall be upon the bankrupt. * * * *"

Although the statement was originally made in the written specifications as filed, that the bankrupt not merely failed to keep books and records, but destroyed and concealed them, there is no proof in the testimony of other than a failure to keep any records except such as are disclosed by the bankrupt's check books and bank passbooks, nor is there any evidence that the bankrupt intentionally made any improper entries in any of these records that were kept. Thus the sole question for determination resolves itself into this: Although there has been no destruction or concealment or falsification of records, nevertheless, may the mere failure per se to keep adequate books of account or records, from which the financial condition and business transactions of a bankrupt, situated as was Mr. Miller, might be ascertained, justify the court in denying a discharge?

A correct answer to this question requires at least a brief analysis of the evolution of the present statute. The original Bankruptcy Act of 1867 (14 Stat. 517), like the English statute, made the mere failure to keep books or records a ground for refusing a discharge, but the later Act of 1898 as amended (Act of February 5, 1903, c. 487, 32 Stat. 797, and the Act of June 25, 1910, c. 412, § 6, 36 Stat. 839), 11 USCA § 32 (b), explicitly states that the omission must have been accompanied by a specific intent to conceal the true financial condition of the bankrupt, and hence the burden of proving such intent rested upon the objecting creditors. The language of the amendment of 1910 required that a discharge be refused if the bankrupt, "with intent to conceal his financial condition * * * failed to keep books of account or records from which such condition might be ascertained." (11 USCA § 32 (b). Thus it is significant that the amendment of 1926 omitted the words "with intent to conceal his financial condition," which were contained in the amendment of 1910, but added the following clause: "Unless the court deem such failure or acts [namely destruction, mutilation, falsification, concealment or failure to keep books or records] to have been justified, under all the circumstances of the case"; and, further, that the burden of proving justification is taken from the objecting creditors and placed upon the bankrupt, once the former have made out a prima facie case. Quite obviously,

these changes are important and indicate a purpose on the part of the Congress to vest in the bankruptcy court a rather wide judicial discretion with respect to the allowance of discharges, where the absence of complete books or records is involved.

No rigid rule may be laid down for determining when mere failure to keep books or records may be sufficient to justify a refusal of the discharge, especially in the case, as here, of an individual not conducting a business of his own. Since the amendment of 1926 made a distinct change in the law, decisions construing the law as it had been previously are not to be taken as a guide for interpreting the latest amendment. The law is not to be interpreted as imposing an unqualified requirement to keep books or records, and, similarly, it does not require that, if they are kept, they shall be of any special type or that any particular method of accounting shall be used. In every case, it is a question of applying a reasonable rule to the particular circumstances, giving due weight to the custom of the normal person under such circumstances. Since complete disclosure is in every case a condition precedent to the granting of a discharge, if such disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act refers. See In re Nix v. Sternberg (C. C. A.) 38 F.(2d) 611, certiorari denied 282 U. S. 838, 51 S. Ct. 20, 75 L. Ed. 744; In re Weiner (D. C.) 28 F.(2d) 881. As was said in Karger v. Sandler (C. C. A.) 62 F.(2d) 80, 81: " * * * The section is not concerned with impeccable bookkeeping as such (In re Russell (D. C.) 52 F.(2d) 749, 753); the interests protected are those of creditors, and the bankrupt's conduct must affect their ability to learn what he did with his estate; but his fault need not involve any specific intent to balk their inquiries, though the standard is left at large, to be fixed ad hoc as the evidence may require. That is no doubt a very loose test, but no looser than some others; for example, that by which the creditor's duty to inquire further is measured, when an insolvent pays a debt under suspicious circumstances, or the standard of care in much of the law of torts. The vague, but imperative, dictates of ordinary fair dealing, or common caution, are taken to supply any inability to tell in advance just what the law will exact. While in such cases the functions of judge and legislator no doubt coalesce, custom has too long accredited the confusion to raise any doubts of its propriety, when the power is plainly granted."

Applying, then, the aforegoing test to the facts disclosed in the present case, the court concludes that, although there is an entire absence of proof of any willful intent on the part of the bankrupt with respect to his failure to keep adequate books or records, nevertheless such failure under the particular circumstances is sufficient to require a denial of the discharge. A discharge is a privilege, not an absolute right, and one who seeks thereby to avoid his debts must be held to a strict compliance with the law. The primary purpose in making any reference to books or records is to express the intent which clearly underlies this particular part of the Bankruptcy Act, that a debtor shall not be relieved of his debts unless and until he has completely disclosed to his creditors his financial condition.

In the present case, as has been shown, the bankrupt was not conducting a business of his own, but was an important official of a large insurance business. Large sums of money were constantly passing through his hands. He borrowed extensively, and intermingled his business and his private transactions to such an extent that, even though such intermingling may not have been unlawful, nevertheless the skill of certified public accountants exerted over a period of approximately one month was unable to identify or to trace large and important sums which presumably belonged to the bankrupt and which passed in and out of the bankrupt's hands over a period of years, both the source and ultimate destination of which, obviously, the bankrupt's creditors are entitled to know. Such business methods in which the bankrupt persisted were, to say the least, loose in character and contrary to the standards which should be maintained by one whose business, and whose income therefrom, was so extensive as the bankrupt's, if he is to be discharged of his debts. If competent accounts cannot determine the true condition of a person situated as was Mr. Miller, and incurring heavy liabilities, it would seem that the requirements of the Bankruptcy Act impliedly compel that a discharge be denied.

In conclusion, therefore, the weight of the credible evidence is ample to satisfy the court that the objecting creditor has shown reasonable grounds to warrant the belief that the bankrupt's failure to keep some additional books or records was not justified under the circumstances. The burden of proving that he was so justified thereupon shifted to the bankrupt, and a careful review of all the evi-

dence in the case satisfies the court that the bankrupt has not sustained this burden.

For the aforegoing reasons, the specification in opposition to the bankrupt's discharge, based upon his failure to keep books of account or records, is sustained, and accordingly he is denied a discharge.