INTERNATIONAL SHOE CO. et al. v.
LEWINE.
No. 7113.

Circuit Court of Appeals, Fifth Circuit.
Jan. 19, 1934.

E. L. Trenholm, of Jackson, Miss., for appellants.

J. Morgan Stevens, of Jackson, Miss., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

L. Lewine, an uneducated Russian who obtained American citizenship through military service in the World War, subsequently married and established a business which in 1930 embraced two shoe stores in Jackson, Miss. He made a written statement of financial condition to Brown Shoe Company in April of that year. In August a serious fire occurred in one of the stores. In September he bought of Brown Shoe Company shoes costing several thousand dollars, credit being extended on the faith of the statement. In October he found himself in financial difficulties and offered to return to Brown Shoe Company their unsold shoes, the offer being declined. In December he was unable to go forward in business, and on the advice of representatives of the Brown Shoe Company and of National Association of Credit Men he went into voluntary bankruptcy. Lewine's application for discharge was resisted on a number of grounds, was referred to a master who reported in favor of the discharge, exceptions to the report were overruled by the judge, and the discharge granted. This appeal followed. The three objections to the discharge now insisted on are that no sufficient books were kept, that goods were obtained from Brown Shoe Company on a false written statement, and that no satisfactory explanation has been given of the loss of assets.

As amended in 1926, 11 USCA § 32 (b) provides in part: "The judge shall hear the application for a discharge * * * and discharge the applicant, unless he has * * * (2) destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case; or (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing, or causing to be made or published, in any manner whatsoever, a materially false statement in writing respecting his financial condition; or * * *. (7) has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities." Respecting the keeping of books the requirement is in the alternative, books or records. There may be records which are not books. It is intended that there be written evidence orderly made and preserved from which the present financial condition of the bankrupt and his business transactions for a reasonable period in the past may be ascertained with substantial completeness and accuracy, to serve as a substitute for or check against his oral statements. The transactions need not be stated in full detail if they are so identified that inquiry can be made about them. The requirement is not rigid, but the judge is allowed to excuse failure whether total or partial if the circumstances justify it. In the present case Lewine himself is incapable of keeping books and for a number of years he employed an assistant cashier in the bank, a man honest and competent, to keep them. The books covered completely the commercial transactions and their accuracy is not questioned, but their completeness is in that there were kept no general ledger accounts, so that a statement of financial condition could not be made from the books alone, and the entries of money transactions did not always indicate the person dealt with. The bookkeeper testified, however, that he could at any time make a statement or give any desired information with the aid of other records kept, especially the annual inventory taken each January and preserved, the invoices of goods a file of which was kept, and the check stubs and canceled checks which were preserved. He did clear up before the master many matters which were questioned. Such a system of books and records is not ideal or desirable, but the judge was justified in considering its deficiencies to be excusable. The lack now most insistently urged is that there was no record of the bankrupt's real estate, of the furniture and fixtures, nor of his indebtedness to the bank. It is testified, however, that the furniture and fixtures appeared in the annual inventories. The real estate holdings would appear from the bankrupt's deeds, and bank debts could be ascertained by a natural and simple inquiry at the bank. The real estate, indeed, was mainly the leases on the stores. Every creditor knew or could learn about the stores and the fixtures in them with which business was being daily done. Omission to record these matters by a bookkeeper with no bad motive suspected ought not to deprive an honest bankrupt of his discharge. Part of the records kept, notably the last inventory and some of the checks stubs and canceled checks, were burned in the fire and in this sense not kept. Such an accidental loss of records is not the destruction or mutilation of them meant by the statute, nor is it the failure to keep them which is intended to be penalized.

The figures in the written statement

alleged to be false are copied in the margin.[1] The net worth given of $54,927 is a balancing figure depending obviously on the correctness of the other figures. The only item attacked as false is, "Mdse., cost, $50,216.00." This is contrasted with an item in an income tax return of January 1st, 1930, of merchandise $32,500. The bookkeeper testifies that he made up the attacked statement as of January 1, 1930; that it was in all respects true; that the merchandise figure is from the January inventory and represents original cost; that the income tax figure was from the same inventory with the goods put at their actual then values. It is also testified that many of the goods, particularly ladies' shoes, had seasonal and vogue value which had passed, and that a general fall in prices had occurred even in 1929. The income tax return was made up by a deputy of the internal revenue department, and was also correct on the basis of actual current values. The bankrupt testifies without contradiction by the credit men to whom the statement was given that his merchandise was understood to have been valued at original cost and that such was the custom. On its face the statement purports to express not present value but cost. For a statement of financial condition to be false it must be not only incorrect but made or acquiesced in either with knowledge of its incorrectness or with reckless indifference to the actual facts and with no reasonable ground to believe it correct. Morimura, Arai & Co. v. Taback, 279 U. S. 24, 49 S. Ct. 212, 73 L. Ed. 586; Hartsfield Co. v. Smith (C. C. A.) 61 F.(2d) 723; Franklin v. Monning Dry Goods Co. (C. C. A.) 217 F. 929. The judge could well hold that this statement so worded was neither incorrect nor false.

A more serious difficulty comes with the effort to explain the shortage of assets. There is no evidence of diversion of or failure to surrender any specific property. On the contrary, as found by the master, the circumstances of the case indicate honesty and fair dealing. There was neither reckless borrowing, nor buying, nor selling. The good faith of the fire is not questioned. No property appears to have been transferred or concealed

at any time. But the schedules show on hand in December, 1930, only an estimated $23,000 of merchandise with liabilities much increased over those in the statement as of January preceding, so that the net worth at bankruptcy appears to be only about $2,000; and the inventory of the trustee makes such a reduction below the values of the schedule of assets as to show an insolvency by a margin of several thousand dollars. The master considered the loss of the apparent net worth of $54,927 shown in January to be explained thus: Deduct from it the difference between original cost and real value of the January inventory $17,714; deduct also the business loss since which the trustee figured from the books to be $17,154; and only $20,058 remains to be explained; the bankrupt produces $18,800 in receivables, furniture and fixtures, and personal property other than merchandise, which leaves only a small difference easily accounted for in uncompensated losses by the fire. The fallacy lies in this, that the $20,058 to be explained is not assets but net worth. It cannot be accounted for by bringing forward only present assets and ignoring the greatly increased present liabilities. Figures based on net worth and book balances are apt to be confusing, and we think it better in accounting for the assets as required by the statute to deal with the actual property. Thus proceeding, we find that the real estate and furniture and fixtures have undergone no change and are accounted for. Cash and receivables in January were $9,432 and in December were $10,149, giving the bankrupt a margin of $700. The bank indebtedness appears reduced from $5,000 to $3,450, indicating that $1,500 of cash was appropriated thus. No new borrowings appear. There remains the stock of merchandise to be considered. We cannot trace the very pairs of shoes and must resort to values here. The real value of the stock in January was $32,-500. According to the trustee the books show that shoes were since bought and added which cost $79,310, making a total stock of $111,810. If the trustee's inventory be taken as accurate —no witness appears to tell how it was made —$17,740 remained unsold, so that a wholesale value of $94,070 was turned into money. But the trustee testifies that the books show that the gross sales plus insurance on those burned amounted to $108,664, so that the goods disposed of produced a gross profit of about $14,600. The bankrupt explains that the profit would be greater but for undiscovered and uncompensated damage from the fire, and but for the heavy marking down of many other goods which was found necessary. The

---

[1] "Cash on hand & in bank.................. $ 3,455.66
Mdse. cost...................... 50,216.34
Furniture & Fixtures...................... 8,758.52
Accounts receivable...................... 5,977.89

Total .................................. $68,408.41
Owe for mdse............................. $ 8,480.60
Owe bank................................. 5,000.00
Net worth................................ 54,927.81

Total .................................. $68,408.41
"The above statement is correct.
"[Signed] L. Lewine, Prop."

evidence warrants a conclusion that the shoes are fully accounted for and that none appear to have been made away with. There remains only the question of what became of the money got for them. $79,310 of new goods were bought, and as we understand the analysis of the scheduled indebtedness $29,923 is still due for merchandise. $8,480 was due in January, so that the new merchandise indebtedness remaining unpaid appears to be $21,443. It follows that the difference between that bought and that remaining unpaid of about $58,000 must have been paid out of the sales. This leaves about $50,664 of the money to be explained otherwise. The trustee says that the books show $31,249 paid out in expenses, which he does not criticize, leaving about $19,315 of money the disposition of which we do not yet know except as the $700 increase in receivables and the $1,500 paid the bank accounts for it. But it is testified that the books are true and are in balance and show all the disbursements. The amounts charged to the bankrupt and his brother are not unreasonable and are not contested. None of the disbursement entries are attacked as being false in fact or improper payments. The bankrupt testifies that nothing has been diverted or misapplied. We conclude that the disposition of all the money is thus shown. No payment is pointed out as being improper or fraudulent.

The judge found the explanation of assets satisfactory. We affirm his judgment.