### In re SMITH.

District Court, D. New Jersey.
Aug. 23, 1935.

Samuel D. Lenox, of Trenton, N. J., for bankrupt.

Sidney S. Stark, of Trenton, N. J., for objecting creditors.

FORMAN, District Judge.

Several creditors objected to the discharge of the above bankrupt.

Three specifications were urged. Only the first, which the referee sustained, requires discussion here. It reads as follows: "1. For the reason that with intent to conceal his true financial condition he has failed to keep books of account or records, and has destroyed and concealed books or records, from which such financial condition might be ascertained." The words are substantially those of the statute.

Before the referee the bankrupt assailed the specification as insufficient as a matter of law in that it was vague, indefinite, and general, and because it was in the alternative. The referee held the specification to be sufficient, and that the proofs submitted sustained it.

The bankrupt urges, now as then, that the specification did not contain sufficient information to apprise him of the charge; that the allegation that he "failed to keep books or records" was an alternative form of pleading which left him in the dark, and that the bankrupt was entitled to a specification as specific as an information or an indictment. He cites, in support of this position, among others, the case of In re Milgraum & Ost, 129 F. 827 (D. C. E. Dist. Pa.), which would appear to give color to the same. However, it appears that Judge Buffington of this circuit put the proposition to rest in the later case of In re Magen Bros. (C.C.A.) 192 F. 883, 884, wherein he said:

"Where the bankrupt has 'with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained,' and the exceptants in such statutory words object to the bankrupts' discharge. Why is this allegation not sufficient? So far as pertinent to the present question, it is to be noted that the bankruptcy law has two objects in view: One, the administration and distribution on equitable principles of the bankrupt's property; the other, the discharge from indebtedness of an unfortunate debtor who has honestly surrendered his assets for administration. Now, one of the usual things in a man's business dealings is the keeping of such books of account as are generally incident to such business. From these he, while carrying on his business, can know his true financial condition, and on bankruptcy such books become most important since by them his creditors can judge of his true financial condition, and determine whether his bankruptcy is an honest failure caused by business reverses, or an attempt to escape liability without a surrender of his property. On the other hand, the failure to keep such books or their concealment or destruction make it more easy for a dishonest debtor to misappropriate his effects. Whether a bankrupt has kept such accounts, and, if so, whether he retains, conceals, or destroys them, is a matter peculiarly within his own knowledge and which, in the nature of things, a creditor ordinarily does not know. All he does know is that the bankrupt has not surrendered such books to the trustee. Now the purpose of a specification is to fairly apprise the bankrupt of such matters in bar of his discharge as will be insisted upon, in order that he may be able to meet them. Such matters are not to be specified with the exactness and formality required in indictments, but only in such substantial form as will fairly inform one of the charges made against him. But where, as in the case of books of account, the bankrupt in the very nature of things, and he alone already knows what books he did or did not keep, and the creditor does not know, except as he infers their nonexistence, concealment, or destruction from the fact of their nondelivery to the trustee, it would seem that a specification following the language of the statute and covering nonkeeping, concealment, or destruction sufficiently and fairly apprises the bankrupt of the matter insisted upon in that respect. As said by this court in Godshalk Co. v. Sterling, 64 C.C.A. 148, 129 F. 580:

"'We cannot assent to the suggestion that it was the duty of the objecting creditor to specify what books of account the bankrupt should have kept. We think the specification went far enough when it affirmed that the bankrupts, with intent to conceal their financial condition, failed to keep books or records from which such condition might be ascertained.'

"Assuredly three separate specifications charging the bankrupts respectively with destroying, with concealing, and with failing to keep books, etc., would each have

been good. Each being singly self-sufficient, certainly there is no reason why the three, united in a single specification, become bad. We are therefore of opinion the court below committed no error in refusing to dismiss the second specification. Such conclusion has support in Collier on Bankruptcy (8th Ed.) p. 265 where (basing its conclusion on In re Ginsburg [D.C.] 130 F. 627, 12 A.B.R. 459; In re Patterson [D. C.] 121 F. 921, 10 A.B.R. 371; In re Brod [D.C.] 166 F. 1011, 21 A.B.R. 426) it is said:

" 'The exact language of the statute should not be used, unless, as in the case of the failure to keep books of account, the language of the statute is sufficient to serve the purpose of giving notice to the offender of the particular conduct which is charged against him as an offense.'

"In the last case cited it is well said:

" 'It was objected to this that the bankrupt was not put upon notice as to what he was charged with, whether it was destroying books of account, concealing the same, or failing to keep such books. I am inclined to think the referee ruled correctly on this question—that this was sufficient. If the trustee in bankruptcy is unable to find proper books of account in a bankrupt's place of business, he cannot tell whether they have been destroyed or concealed, or whether the bankrupt has never had such books of account, and has therefore failed to keep them. So that, as the burden is on the objecting creditor to make out a case, if the bankrupt has ample opportunity to meet the evidence submitted, no harm is done the bankrupt by using this language in the objection, and he would have no just cause for complaint.' "

The proofs disclosed that there was no cashbook, statement of cash, or ledger. The records of accounts receivable were incomplete, and the auditor could not ascertain the financial position of the bankrupt from the meager records which were produced.

The bankrupt argues that inasmuch as certain books and records were produced, the case at bar differs from the cases where no books or records whatsoever were kept, and that in such case a specification charging failure to keep books or records in the words of the statute was too vague, general, and indefinite. I cannot agree with such a distinction.

The applicable section of the Bankruptcy Act is as follows: "(b) The judge shall hear the application for a discharge * * * and discharge the applicant, unless he has * * * destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, *from which his financial condition and business transactions might be ascertained;* unless the court deem such failure or acts to have been justified, under all the circumstances of the case." Section 14b, as amended in 1926 (11 U.S.C.A. § 32 (b). (Italics mine.)

The bankrupt was the proprietor of a wholesale drug business, the volume of which ran into many thousands of dollars each year. A normal expectation justified the contemplation that he would keep an intelligible bookkeeping system. In other words, he cannot project himself into those classes of cases which exempt the bankrupt from keeping such a system by reason of circumstances over which he has no control or the inconsistency of the nature of the business with the keeping of regular records.

Having in mind the wording of the statute, it appears to have been his duty to keep a competent record of his business *from which his financial condition and business transactions could be ascertained.* Unless such ascertainment can be made, it matters little whether he produces some inadequate records or no records whatsoever.

While, undoubtedly, as counsel for the bankrupt submits, one of the objectives of the Bankruptcy Act is to restore to the bankrupt his rights freely to engage in the commercial community, yet, the later development of the law, as evidenced by the amendment of May 27, 1926, indicates a disposition to compel the bankrupt to honestly and candidly disclose his position to his creditors in order that he may avail himself of the privileges of the law.

Judge Booth, in the case of Nix v. Sternberg, 38 F.(2d) 611, 612 (C.C.A.8th), says:

"It is to be noted that this amendatory statute omits the words, 'with intent to conceal his financial condition,' which were contained in the former statute, in connection with the provision relating to the failure to keep books. But in the amendatory statute are added the following words: 'Unless the court deem such failure or acts to have been justified, under all the circumstances of the case.' The burden of proving 'intent to conceal' is taken from the objecting creditors or the trustee; and the burden of proving justification is placed

upon the bankrupt. These changes, in our opinion, are significant and indicate a purpose on the part of Congress to lodge with the bankruptcy court a reasonably wide judicial discretion in respect to the matter of denying a discharge for failure to keep books.

"The court in the case at bar held that the bankrupt had not complied with the statute, and said in reference to the failure to keep books: 'The book produced shows mutilation. The explanation given by the Bankrupt is far from satisfactory. His financial transactions were large. He "failed to keep books of account or records from which his financial condition and business transactions might be ascertained." Such failure is not shown "to have been justified under all the circumstances of the case." The objection to bankrupt's discharge will therefore be sustained.' "

See, also, the opinion of Judge Avis of this court in the case of In re Krulewitch, 60 F.(2d) 1039, and the language of the Circuit Court of Appeals of the Second Circuit in the per curiam opinion in the case of Karger v. Sandler, 62 F.(2d) 80, 81, as follows:

"The case has been treated as though the statute required proof of an intent to conceal the bankrupt's position from his creditors, ignoring the amendment of 1926. That is no longer necessary; it is enough that his failure, or the destruction, was not 'justified under all the circumstances,' a vague phrase, admitting much latitude of construction. Nix v. Sternberg, 38 F.(2d) 611 (C.C.A.8). No doubt the section is not concerned with impeccable bookkeeping as such [In re Russell (D.C.) 52 F.(2d) 749, 753]; the interests protected are those of creditors, and the bankrupt's conduct must affect their ability to learn what he did with his estate; but his fault need not involve any specific intent to balk their inquiries, though the standard is left at large, to be fixed ad hoc as the evidence may require. That is no doubt a very loose test, but no looser than some others; for example, that by which the creditor's duty to inquire fur-

ther is measured, when an insolvent pays a debt under suspicious circumstances, or the standard of care in much of the law of torts. The vague, but imperative, dictates of ordinary fair dealing, or common caution, are taken to supply any inability to tell in advance just what the law will exact. While in such cases the functions of judge and legislator no doubt coalesce, custom has too long accredited the confusion to raise any doubts of its propriety, when the power is plainly granted.

"Moreover, section 14b shifts the burden of proof, once the creditor satisfies the judge that there are 'reasonable grounds for believing' that the bankrupt has been guilty of any of the forbidden acts or omissions. Here there were certainly such grounds. The bankrupt had abandoned even a bank account, and resorted to the extremely cumbersome method of paying his sister in cash for checks on her account with which to meet his own obligations. Such indirection on its face presupposes some motive, which there was reasonable ground to take as sinister. Again, while the slips of his cash receipts from his patients—he was a doctor—did not go far to confirm his income tax returns, at least they were contemporary entries, whose correspondence with the totals returned would have helped to support them. Why he should have destroyed these as soon as he filed the returns, he does not intelligibly explain. These two practices alone are enough to put him to a more convincing explanation than he has given, and support the judge's conclusion that he had not affirmatively 'justified' the almost complete absence of any documents bearing upon his financial doings."

While the proofs in the present case may not be as glaring as those referred to in the last opinion, they are sufficient to sustain the ruling of the referee upon the first specification, and make it unnecessary to discuss his other rulings, particularly in view of the fact that they were not argued by counsel.

An order denying the discharge will be entered.