MANTON, Circuit Judge.
Appellee was adjudged a bankrupt February 9, 1933, and a trustee of his estate was appointed. Appellant filed a claim for $51,000, and now appeals from his discharge in bankruptcy pursuant to an order entered therefor June 12, 1935. She bases her claim on the failure of the *259 bankrupt to keep books of accounts or records from which his financial condition and business transactions might be ascertained; also, that a trust agreement, dated July 15, 1932, was executed with intent to hinder, delay, and defraud his creditors within section 14b (2), (4) of the Bankruptcy Act, as amended by Act May 27, 1926, c. 406, § 6, 44 Stat. 663, 11 U.S.C.A. § 32 (b) (2, 4).
The bankrupt had traded extensively in the stock market, buying and selling securities on which he eventually lost heavily. He had been appointed trustee in two estates created by relatives, which amounted to more than $300,000, in which he was named as remainderman. He had withdrawn large sums from these estates for his personal use. By an order of the Surrogate’s Court, after an accounting, he was surcharged for these appropriations. Although the bankrupt had a college education and had had banking experience as an officer of several banking institutions, the appellee testified in these proceedings that he had kept no books of account as to these estates, nor for his personal matters.
The bankrupt testified that prior to October, 1930, his net worth was from $350,000 to $500,000. This was the best definite estimate he was capable of giving. The schedules in bankruptcy show $190,000 liabilities owed to banks, investment houses, and individuals. He attempts to excuse his failure to keep books of account, testifying he was a “poor business man,” after admitting his business experience and education. For books of account, he substituted certain records and asked the court below to accept them as a substitute for a set of books. These are income tax reports which do not show assets and liabilities. He did not prepare or show an inventory of his assets or his liabilities and the income tax reports are of lidie value. No bank deposit books were submitted for, as he says, “it was not necessary to have a bank book,” and he says he never had one. No duplicate deposit slips were produced. Although some canceled checks were produced, it is impossible to say whether all he had were exhibited. Some were to cash or to a bank direct and he was unable to explain many of them. His check books with some notations on the stubs were of little value. Many stubs were not filled out. The bank accounts were of little assistance in unraveling the business transactions of the bankrupt. The item of $50,000 borrowed from the appellant does not appear either as a deposit or otherwise through his bank accounts. Much was left to the bankrupt’s admittedly poor memory. While some brokerage monthly statements were produced, they are not sufficient. Some items of receipts by the bankrupt remain unexplained as to whether, where, and how they were expended.
The second specification relied on was a violation of clause (4) of settion 14b, Bankr.Act, as amended, 11 U.S.C.A. § 32 (b) (4), providing that at any time subsequent to the first day of the twelve months immediately preceding the filing of a petition, if a bankrupt transfers, removes, destroys, or conceals or permits to be removed, destroyed, or concealed any of his property with an intent to hinder, delay, or defraud his creditors, he may not obtain a discharge.
By a trust agreement, executed on July 15, 1932, within a year prior to the filing of this petition, the bankrupt attempted to transfer substantially all the property which he possessed or had in his control, to trustees for the purposes specified, that is, to secure the endorsement of the bankrupt’s mother and also to secure the estate of his brother for any misappropriations or losses in the estates in which he acted as trustee. This agreement is objected to because it created a preference as to the two creditors and because it expressly reserved to the bankrupt all property and interest after payment of the liabilities therein mentioned. We need not, however, consider this second objection to his discharge, for we are satisfied that the discharge should be denied because of his failure to keep books of accounts or records from which his financial condition and business transactions might be ascertained.
Intent to conceal the financial condition is no longer a necessary element to support an objection to a discharge for failure to keep books. Nix v. Sternberg, 38 F.(2d) 611 (C.C.A.8), certiorari denied 282 U.S. 838, 51 S.Ct. 20, 75 L.Ed. 744; In re Krulewitch, 60 F.(2d) 1039 (D.C.N.J.). The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonable *260 ness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies. Nix v. Sternberg, supra; Karger v. Sandler, 62 F.(2d) 80 (C.C.A.2); In re Miller, 5 F.Supp. 913 (D.C.Md.). While it is always open to the bankrupt to affirmatively justify his failure to keep records, each case must stand upon its own facts with the inquiry always as to whether the bankrupt has sustained this burden of justification which the statute places upon him for his failure to keep adequate records. Where the bankrupt was involved in many transactions of an extensive character, a substantially accurate and complete record of his- affairs is a prerequisite to his discharge. With obligations outstanding in large sums in the form of notes to banks and to others, it was a matter of importance that this bankrupt maintain records from which his financial condition could be ascertained. His attempt to substitute stubs and brokerage accounts through brokerage statements for books which should reflect his true business transactions is insufficient to comply with the requirements of the Act. The purpose and intent of section 14b of the Bankruptcy Act is to make the privilege of discharge dependent on a true presentation of the debtor’s financial affairs. It was never intended that a bankrupt, after failure, should be excused from his indebtedness without showing an honest effort to reflect his entire business and not a part merely. To be sure, there may be records which are not books; but it is intended that there be available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained. Records of substantial completeness and accuracy are required so that they may be checked against the mere oral statement or explanations made by the bankrupt. See International Shoe Co. v. Lewine, 68 F.(2d) 517, 518 (C.C.A.5).
In the instant case, where there were many transactions of unusual sums of money paid, for securities and received i.n sale thereof, and the bankrupt had borrowed various large amounts, an adequate set of records should have been kept by him to reflect these transactions. The failure to keep his checking account, stubs of canceled checks shows such neglect as to be tantamount to an attempt to conceal transactions. He has not justified his failure to keep books of account and his discharge in bankruptcy should have been denied.
Order reversed.