## HEDGES v. BUSHNELL.
### No. 1858.

Circuit Court of Appeals, Tenth Circuit.
Oct. 20, 1939.

Albuquerque, N. Mex., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

Joseph Walter Hedges filed a voluntary petition in bankruptcy, he was adjudicated a bankrupt, and he seasonably filed his petition for discharge. A creditor objected on several grounds of fraud, also for failure of the bankrupt to keep books of account or records from which his financial condition and business transactions might be ascertained. The referee heard evidence and recommended that the discharge be granted. On review of the evidence adduced before the referee, and without hearing any additional evidence, the court reversed the decision of the referee and denied the discharge for the reason that the bankrupt failed to keep adequate books of account. The bankrupt appealed from that order.

The bankrupt moved from Oklahoma to New Mexico sometime in 1931. He took with him about $3,600 in cash. He had no other property except an old automobile. In March, 1932, he purchased a small tract of land with a five-room adobe residence on it in the village of Pecos, New Mexico, for which he paid $1,500 in cash. He lived in the residence, and he erected a small adobe structure on the land where he operated a gasoline filling station. He later began operating a like station at Santa Fe, and he subsequently began operating two at Gallup and one at Grants. All of the stations were of adobe construction, and all of them except the one at Pecos were on leased-land for which nominal rentals of $5 to $15 per month were paid. The business was conducted in the name of Hedges Independent Oil Company. The gasoline for all such stations was purchased from a refinery at Artesia, New Mexico, and transported by truck to the several stations. The bankrupt maintained accounts in two banks, one at Gallup and one at Santa Fe. Some of the money accruing at the filling stations was deposited in bank and some was used in paying accounts. Accounts were usually paid by check. His records consisted of the bank accounts, invoices, sales slips, cancelled checks and check stubs. He kept no other books of account or records. He failed to file an income tax return until 1935, at which time he employed an accountant for that purpose. Using the records of the

Hugh B. Woodward, of Albuquerque, N. Mex. (J. O. Seth, of Santa Fe, N. Mex., and R. F. Deacon-Arledge, of Albuquerque, N. Mex., on the brief), for appellant.

Donald M. Bushnell, pro se., of Albuquerque, N. Mex. (John F. Simms, of

bankrupt, the accountant prepared returns for the years 1931, 1932, 1933, and 1934. On the basis of such returns no tax was due or paid. The accountant advised the bankrupt that his business was practically insolvent. The bankrupt sold the property at Pecos and the filling station at Santa Fe to one purchaser in September, 1934. The sale prices were $1,800 and $200, respectively, of which $1,000 was paid in cash and the balance on June 14, 1935. And he sold the two stations in Gallup and the one at Grants to another purchaser on June 21 or 22, 1935. The sale price was $1,200 of which $700 was paid in cash and the balance in August. The purchaser also paid slightly more than $1,500 for gasoline which was in the tanks and other personal property, and he assumed certain debts. One of the trucks which the bankrupt had used in transporting gasoline from the refinery went to the purchaser of the property at Pecos and the station at Santa Fe, and the other two went to the purchaser of the two stations at Gallup and Grants. Nothing was paid for them and in each instance the purchaser assumed and agreed to pay the balance of the purchase price which the bankrupt owed. The purchaser of the property at Pecos and the station at Santa Fe had been employed by the bankrupt for about two years prior to the sale at $20 per week and his board; and the purchaser of the stations at Gallup and Grants was the son of a nephew of the bankrupt, and he had also been employed by the bankrupt for approximately two years at $20 per week and his board.

One of the attorneys for the objecting creditor was appointed trustee. The bankrupt delivered to the referee all of his bank statements, invoices, sales slips, cancelled checks, and check stubs then on hand. He was examined at length on three separate occasions respecting his business, books and records. He testified that his education was limited to the seventh grade and that of his second wife to the third grade; that he kept no other books or records; that he did not know how to keep books; that his son was a silent partner in the business; that he paid the son $1,400 in cash out of the money received from the sale of the business; that some of the money received for the business was paid to the refinery; that some was used in paying other accounts; that he had suffered various financial losses, including losses of gasoline in transit, repair and upkeep of trucks, loss of $700 sustained in the failure of a bank at Gallup, shortage of an employee in the sum of $1,000, shortage of his son in the sum of $800, and bad accounts; and that full disclosure had been made. The only testimony offered other than that of the bankrupt was by the objecting creditor. He merely testified that he had worked for the bankrupt; that he was injured in an automobile accident in May, 1935; and that shortly prior thereto he heard the bankrupt say that if everything continued as it had started that month he thought he could clear $20,000 during the summer months above expenses. The bankrupt denied making such statement and testified that he was fighting at that time to keep even. In addition to making his own investigation into the affairs of the bankrupt, the trustee and attorney for the objecting creditor solicited and obtained the assistance of an agent of the Department of Justice. Even so the only ground of objection now relied upon is the failure to keep books or records.

The pertinent part of Section 14b, of the Bankruptcy Act of July 1, 1898, 30 Stat. 544, 550, as amended by the Act of May 27, 1926, 44 Stat. 662, 663, and as amended by the Act of June 22, 1938, 52 Stat. 840, 850, 11 U.S.C.A. § 32c, provides that the court shall grant the discharge unless satisfied, among other things, that the bankrupt has failed to keep or preserve books of account or records from which his financial condition and business transactions might be ascertained, unless the court deems such failure to have been justified under all the circumstances of the case, and further that if the person making objection shall show to the satisfaction of the court that there are reasonable grounds to believe that the bankrupt has committed any of the specified acts which would prevent his discharge, then the burden shall rest upon the bankrupt to prove that he has not committed them. The original act provided that the failure to keep books of account or records should be ground for the denial of the discharge if done with a fraudulent intent to conceal the true financial condition of the bankrupt and in contemplation of bankruptcy, and it did not authorize the granting of a discharge if the court should find that such failure was justified under all of the circumstances. The effect of the changes was to take the burden of proving an intent to conceal from the objecting creditor or trustee, and to place on the bankrupt the

burden of proving justification. Nix v. Sternberg, 8 Cir., 38 F.2d 611; Rosenberg v. Bloom, 9 Cir., 99 F.2d 249. The burden therefore rests on the objecting creditor in a case of this kind to show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt failed to keep or preserve books of account or other records from which his financial condition and business transactions may be ascertained, Baash-Ross Tool Co. v. Stephens, 9 Cir., 73 F.2d 902; In re Pinko, 7 Cir., 94 F.2d 259; Willoughby v. Jamison, 8 Cir., 103 F.2d 821. But after the objecting creditor has met and discharged that burden, the bankrupt must carry the burden of showing that such failure was justified under all the circumstances of the case, Nix v. Sternberg, supra; Karger v. Sandler, 2 Cir., 62 F.2d 80; In re Underhill, 2 Cir., 82 F.2d 258; Rosenberg v. Bloom, supra.

The statute lodges in the bankruptcy court a reasonably wide judicial discretion in determining whether the failure to keep or preserve books of account or records was justified under all the circumstances of the case, and ordinarily the determination of that question will not be disturbed on appeal except in case of gross abuse of such discretion. Nix v. Sternberg, supra; Baash-Ross Tool Co. v. Stephens, supra; Third National Bank v. Schatten, 6 Cir., 81 F.2d 538; Hultman v. Tevis, 9 Cir., 82 F.2d 940.

Here the bankrupt kept and preserved some records. True, they consisted of bank accounts, invoices of gasoline purchased from the refinery, sales slips, cancelled checks and check stubs. But the statute does not exact or concern itself with any particular form of books or records. An impeccable system of bookkeeping which would meet with the approval of a skilled accountant or records so complete that they would satisfy an expert in business is not required as a prerequisite to discharge. Karger v. Sandler, supra; In re Underhill, supra. Records need not be so complete that they state in detail all or substantially all of the transactions taking place in the course of the business. It is enough if they sufficiently identify the transactions that intelligent inquiry can be made respecting them. International Shoe Co. v. Lewine, 5 Cir., 68 F.2d 517. Taking into consideration the limited education of the bankrupt, the kind and extent of business operated, and the ab-

sence of evidence satisfactorily showing bad faith, we think the failure to keep books of account and the failure to keep more complete and detailed records was satisfactorily explained. Compare International Shoe Co. v. Lewine, supra; Hultman v. Tevis, supra; In re Neiderheiser, 8 Cir., 45 F.2d 489; In re Hatch, D.C., 43 F.2d 463.

The order is reversed and the cause remanded with direction to grant the discharge.