In re BENDIX.

HILLMER v. BENDIX.

No. 7810.

Circuit Court of Appeals, Seventh Circuit.

April 23, 1942.

Rehearing Denied June 3, 1942.

Gordon McLeish Leonard, of Chicago, Ill., for appellant.

G. A. Farabaugh, of South Bend, Ind., for appellee.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

This is an appeal from an order of the District Court denying a petition for review of an order of the referee, granting a discharge in bankruptcy.

On an involuntary petition, Vincent Bendix was adjudicated a bankrupt on June 7, 1939. Mr. Bendix was reputed to have a net worth as of June 30, 1929, of over thirty-eight million dollars. In that year, he paid a federal income tax of approximately one million dollars. He had many business connections and literally thousands of transactions. As the depression progressed, his assets dwindled rapidly until in ten years, he had gone from an estimated fortune of thirty-eight million dollars in 1929 to bankruptcy in 1939. His creditors were numerous and their claims totaled several million dollars. Some of the claims were very large, one amounting to over two million dollars. On the last day for filing objections to the bankrupt's discharge, it remained for a creditor whose claim amounted to $85 and who had never appeared in the proceedings before, to file objections. His claim grew out of an $85 deposit he had in a closed bank in Chicago, in which bank Bendix was a stockholder and owed a stockholder's liability. The objecting creditor claimed to act for all the creditors of this bank. The objecting creditor never put in his personal appearance and his specifications of objections were verified by his attorney on information and belief. The specifications as originally filed numbered forty-five. The referee overruled the motion of the bankrupt to dismiss the specifications because not properly verified. The referee then permitted the objecting creditor to proceed with an exhaustive examination covering a period of eight days and accumulating a record of 882 pages of evidence. At the conclusion of the evidence, the case was briefed and argued, and the referee made his findings, which were adopted by the District Court. The referee concluded that the discharge should be granted, and the District Court sustained this conclusion on review.

The questions argued here are:

1. That the bankrupt did not discharge the burden of proof that was on him to show that he did not conceal his property from the trustee.

2. That the bankrupt gave no satisfactory explanation of the loss of his assets.

3. That he had not kept books as required by the statute relating to discharge in bankruptcy.

4. That the court erred in refusing to consider as concealed any assets surrendered by various parties in compromise settlements with the trustee.

These questions bring us face to face with the findings of fact and conclusions of law by the lower court. The objecting creditor's argument on the burden of proof is bottomed upon Paragraph c of Section 32, Title 11 U.S.C.A., which provides: "Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

If the referee and the District Court thought there was reasonable ground to believe the bankrupt had committed the alleged acts, then of course the burden shifted to the bankrupt to explain. That called for an exercise of discretion, after a consideration of the facts. We have no way of knowing whether the lower court considered the burden was upon the objecting creditor or upon the bankrupt. All we know is that after eight days of hearing testimony and piling up a record of 882 pages, the referee found the charges were not sustained, and the District Court sustained the referee.

We have read the abstract of some 164 pages of the testimony contained in the record, and we think the referee could not have found otherwise than he did.

The evidence shows thousands of transactions. Mr. Bendix had many transactions with his close business associates in which he sold them stocks that for the most part had no market listing. In his extremity, he sold to his business associates stocks and other assets at prices that years afterwards seem inadequate. His business associates were able to and did make some substantial profits out of their transactions with Mr. Bendix. But there is not one scintilla of evidence that the property or the proceeds therefrom were held for Mr. Bendix or that any of such property or proceeds ever found its way back into his hands. Six or seven years before the bankruptcy, when the bankrupt still had property valued at several millions of dollars, and at a time when he had every reason to believe he was solvent, he gave some stock in one of his corporations to some of his close business associates, as compensation for services they had rendered him from time to time. The stock was considered of no value at the time of bankruptcy.

Back in the early thirties when he thought he was still worth several million dollars, a sum far in excess of his liabilities, he gave to his adopted daughter some substantial sums of money and stock, which the bankrupt later invested for her in a farm in New Jersey, title to which was taken in a corporation; but Mr. Bendix never had a share of stock in the corporation or any interest in it. To show his good faith in this transaction, he called attention to it in his bankruptcy schedule.

We have made no effort to set forth the details concerning the many transactions. They are too many and voluminous. Suffice it to say, they were all of the same general character we have just indicated.

The trustee in bankruptcy made claims against some of Mr. Bendix' business associates and his daughter, relating to his business transactions with his associates and the farm transaction with his daughter, and to compromise the claims each of them made a substantial settlement with the trustee. The referee heard pages of testimony about these compromises. What weight he gave to them we have no means of knowing, except that he found in favor of the bankrupt that he was not guilty of fraudulent concealment, and that he had satisfactorily explained his loss of assets.

We think this finding was not clearly erroneous, but on the contrary was sustained by the evidence. Under such circumstances, it is our duty to affirm the finding of the lower court. In re Pinko, 7 Cir., 94 F.2d 259; In re Horwitz, 7 Cir., 92 F.2d 632; Texas National Bank v. Edson, 5 Cir., 100 F.2d 789, 791; In re Doody, 7 Cir., 92 F.2d 653, 655.

We do not know whether the court refused, as the objecting creditor said it did,

to consider as concealed assets any of the assets surrendered in the compromises, or whether on a consideration of the voluminous testimony it considered that the probative value of such compromises was fully met and explained by the other evidence. For aught that appears in this record he may have considered these compromises along with all the other evidence in the case and reached the conclusion, which he did reach, that the bankrupt had not concealed his assets or failed to explain the loss thereof. On a consideration of the entire record on this point, we think the referee's finding was not clearly erroneous and the same was properly sustained by the District Court.

▮ With reference to the keeping of books, the objecting creditor put on the stand the auditor employed by the trustee to audit the books of the bankrupt. The books and records were so elaborate and complete that it took the auditor and his assistants four hundred working days of seven hours each to audit the books. The auditor testified of the bankrupt and his books as follows: "In our examination of these books we did not find any evidence of dishonesty upon the part of the bankrupt * * * All of the books that we had were in general in good shape * * * we found the differences and the books balanced out perfectly * * * he kept a substantially accurate set of books * * * I cannot give you any idea of the number of transactions that we have audited, but there were thousands of them."

On evidence of that kind produced by the objecting creditor and not discredited or disputed, it would seem to us clear that such books met the requirement of the statute. 11 U.S.C.A. § 32, sub. c.

There is no statutory mandate that books be kept. If books or records are not kept, that may be grounds for denying a discharge. The determination of whether there have been kept such books of accounts or records from which the bankrupt's financial condition and business transactions might be ascertained, rests in the sound discretion of the trial court. The trial court has a wide discretion in determining whether adequate books or records were kept. That determination will not be disturbed on appeal unless there has been a clear abuse of discretion. There was no such abuse here. Hedges v. Bushnell, 10 Cir., 106 F.2d 979, 982; Interna-

tional Shoe Co. v. Lewine, 5 Cir., 68 F.2d 517, 518; In re Marx, 7 Cir., 125 F.2d 335.

In our opinion, the evidence in this case leads only to the conclusion reached by the trial court and the decree is affirmed.