**In re Edward Joseph WALDROOP, SS # 525–82–1714, a/k/a E. J. Waldroop and Edward J. Waldroop, Debtor.**

**RIO GRANDE VALLEY BANK, a New Mexico corporation, and Donald D. Becker, trustee, Plaintiffs,**

**v.**

**Edward Joseph WALDROOP, a/k/a E. J. Waldroop and Edward J. Waldroop, Defendant.**

**Bankruptcy No. 81–00793 M A. Adv. No. 81–0814.**

United States Bankruptcy Court, D. New Mexico.

July 30, 1982.

Calvin Hyer, Jr., Albuquerque, N. M., for plaintiff Rio Grande Valley Bank.

Donald D. Becker, Albuquerque, N. M., for trustee.

Edward Joseph Waldroop, defendant pro se.

MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on the complaint of the trustee and creditor Rio Grande Valley Bank (RGVB) for determination of discharge and objection to discharge of a debt owed to RGVB by the debtor. The facts are as follows:

The debtor filed a chapter 7 petition for relief under the Bankruptcy Code on July 22, 1981. A trustee was appointed and both

the trustee and the debtor's creditors began inquiries as to the debtor's financial condition. At the examination of the debtor, held pursuant to Rule 205 of the Bankruptcy Rules, the debtor testified that prior to the examination, but after the filing of the petition, he had moved out of his residence with the help of some individuals whom he had picked up in a local bar. The debtor testified that he had never seen them before, that he never saw them again, and that they were paid with a "six-pack." These individuals, according to the debtor, had built a bonfire and were burning items which neither the debtor or they wanted. Several boxes of "papers" were burned, and the debtor testified that some of his missing financial records may have been destroyed in this fire; the debtor was unsure because he failed to examine the contents of the boxes very carefully before directing that they be thrown into the fire.

Also offered as evidence was a financial statement in which the debtor had represented to RGVB that the debtor received a salary of $1,800.00 a month from Nelson's Meats. That financial statement was given in conjunction with two loans, one in November of 1980 and one in January of 1981. The principal amount of the total loaned pursuant to this financial statement was $11,500.00, and the testimony of RGVB's senior vice president for lending was that the money would not have been lent had the debtor not listed that $1,800.00 per month income. The debtor and RGVB agree that no salary was ever received by the debtor from Nelson's Meats. The debtor testified that he was told by a bank loan officer that he should write something in the "salary" blank and so he did; RGVB's vice president testified that Waldroop was not directed as to how to fill out the financial statement.

Finally, the evidence introduced at trial and the testimony of the debtor indicate that in January 1981 the debtor borrowed $65,000.00 from Plaza del Sol National Bank to buy an establishment called Danbi's Lounge. The money was borrowed under a limited partnership name, the debtor being the general partner and the signer of the note for the loan. The debtor testified that the money was not spent to buy the business, but rather went to unspecified personal expenditures of the debtor and to pay gambling losses.

The trustee and RGVB argue that the evidence is sufficient to require the Court to deny the debtor's discharge under § 727 of the Bankruptcy Code or in the alternative to at least except the debt to RGVB from the debtor's discharge pursuant to § 523. Plaintiffs contend that the debtor's behavior meets the requirements for denial of discharge in 11 U.S.C. § 727(a)2–6 and for exception to discharge in 11 U.S.C. § 523(a)(2)(B). We shall consider each of these sections, and the behavior of the debtor in relation thereto, in turn.

The complaint alleges that the debtor engaged in actions contrary to § 727(a)(2) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, in that property of the debtor or estate was transferred, removed, destroyed, mutilated, or concealed. However, we find no evidence of destruction except of "papers," and doubt that these papers had any value as property except for the information contained in them. This section of the statute applies to assets with value as possible payments to creditors, *see LeSueur v. George (In re George),* 9 B.R. 9 (Bkrtcy.S.D.Fla.1981); *Steinberg v. Reagan (In re Reagan),* 4 C.B.C.2d 1372, 13 B.R. 588 (Bkrtcy.E.D.Tenn.1981); *Semmerling Fence & Supply, Inc., v. Ramos (In re Ramos),* 7 B.C.D. 458, 8 B.R. 490 (Bkrtcy.W.D.Wis. 1981), and does not apply to material such as that destroyed by the debtor. There has been no evidence of property being brought to light after an attempt to conceal or transfer that property by the debtor, so we need not consider whether there was intent to hinder, delay, or defraud a creditor or officer of the estate. We find that the debtor's discharge is not prohibited by any actions contrary to § 727(a)(2).

Next we turn to § 727(a)(3) of the Code. This section requires that a debtor be discharged unless:

The debtor has concealed, destroyed, mutilated, falsified, of failed to keep or preserve any recorded information including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . .

11 U.S.C. § 727(a)(3).

The trustee and RGVB contend that the debtor's burning of records and failure to provide records to explain his financial condition combine to require that his discharge be denied. As to the burning, or possible burning, of records when the debtor moved out of his house, it is not clear what records were burned, or whether any records which RGVB or the trustee required were in those boxes. We question the advisability of burning whole boxes of papers without examining them closely after one has filed a petition for relief under the Bankruptcy Code; however, without evidence of the contents of the boxes, we cannot find that the destruction of records is sufficient alone to deny a discharge under this section. However, § 727(a)(3) includes a failure to keep or preserve records not justified by circumstances. Consequently, if we find a lack of financial records, this section suggests that it does not matter whether they were destroyed or whether they existed in the first place. What is important is whether, upon examination, the records are sufficient.

Sufficiency under § 727(a)(3) is a somewhat elusive characteristic to define. This section of the Code did not materially change from Section 14(c) of the Bankruptcy Act, however, and the United States Court of Appeals for the Tenth Circuit interpreted sufficiency under that statute in *Hedges v. Bushnell*, 106 F.2d 979 (10th Cir. 1939), and *Johnson v. Bockman*, 282 F.2d 544 (10th Cir. 1960). Under these decisions, a debtor was not required to have an impeccable bookkeeping system as long as transactions could be identified and intelligent inquiry made. These cases put the burden of proof on the trustee or creditor to show

lack of records but did not require a showing of intent to defraud on the part of the debtor. Once the creditors have made their showing, the debtor must then show that the absence of records is justified under all relevant circumstances. *Hedges v. Bushnell, supra; Johnson v. Bockman, supra.* In the instant case, the debtor provided income tax returns for 1978 and 1979, but had not filed a 1980 tax return or provided creditors with similar information by the fall of 1981. When questioned by the trustee and creditors, the debtor sometimes remembered details of transactions and sometimes did not, but rarely knew where records to support his memory could be found.

■ Finally before the Court is the matter of the $65,000.00 borrowed from Plaza del Sol National Bank in January 1981. This money was ostensibly borrowed to enable the debtor to buy a liquor establishment called "Danbi's Lounge." It is clear that the money was not used for that purchase; what it was used for is less clear. Section 727(a)(5) of the Bankruptcy Code denies discharge to a debtor who cannot satisfactorily explain a loss of assets or deficiency of assets to meet the debtor's liabilities. In this case, $65,000.00 received by the debtor in January was apparently gone in July with nothing to show for it. The debtor accounts for this money by saying that he lived off the money and lost the rest of it gambling. This issue relates back to § 727(a)(3) in that there is no set of recorded information which shows where this money went. There are some airline tickets and hotel receipts which the debtor says reflect payments made from this money, but the major portion has disappeared without a trace. This Court is convinced, as was the court in *Tucker v. Devine (In re Devine)*, 4 C.B.C.2d 732, 11 B.R. 487 (Bkrtcy.D.Mass.1981), that the production of appropriate records to explain a loss of assets is a prerequisite to discharge. In *Tucker*, as in the instant case, much of the information about the debtor's financial condition came from the debtor's memory. There were no supporting documents and the court held that the debtor had failed to

supply *reliable* information (emphasis ours), or anything beyond "self-serving memory." *Id.*, 4 C.B.C.2d at 735, 11 B.R. at 489. In *First Texas Savings Assn. v. Reed (In re Reed)*, 4 C.B.C.2d 839, 8 B.C.D. 31, 11 B.R. 683 (Bkrtcy.N.D.Tex.1981), the court considered a deficit of almost $20,000.00, which the debtor accounted for by saying that at least $10,000.00 was lost gambling and the rest spent in one fashion or another. The debtor's explanation was found to be insufficient, the court stating that creditors who had expected to be paid have a right to know what happened to the debtor's money, and that the debtor must properly account for funds which passed through his hands in the period prior to the filing of the bankruptcy petition. *Id.* Applying *Tucker* and *First Texas Savings Assn.* to the instant case, we find that the debtor's inability to account for the disposition of $65,000.00 in the six months prior to the filing of his bankruptcy petition falls far below the requirements of the Bankruptcy Code. A few hotel and airline receipts and the debtor's unsupported memory of other expenditures are neither appropriate nor adequate. The debtor having either failed to keep or preserve adequate records, as required by 11 U.S.C. § 727(a)(3), and having failed to otherwise explain the loss of $65,000.00, this Court finds that the debtor should be denied a discharge.

Having so found, we need not reach the issue of whether any false representations on the debtor's financial statement supplied to Rio Grande Valley Bank are sufficient to require that the debt be excepted from a general discharge.

An appropriate order shall enter.