## In re BANCROFT.

### No. 62643.

District Court, N. D. Ohio, E. D.

Feb. 20, 1946.

Geo. E. Rich and Marvin L. Gardner, both of Cleveland, for bankrupt.

E. D. McCurdy (of Boyd, Brooks & Wickham), of Cleveland, for objecting creditors.

JONES, District Judge.

This case is before the Court on a petition by Household Finance Corporation, objecting creditor, for review of the Referee's order granting the bankrupt a discharge.

On November 28, 1941, the bankrupt obtained a loan of $500 from the objecting creditor. In connection with this loan he made a financial statement in which he listed the following obligations: Cleveland Trust Company, $550; Commonwealth Loan Company, $220; Aetna Finance Company, $130; and the May Company, $210. From the proceeds of the loan, the objecting creditor paid $237.41 to the Commonwealth Loan Company, $143.70 to Aetna Finance Company, and $118.89 to the bankrupt.

On March 20, 1942, the bankrupt received a second loan of $500 from the objecting creditor; $426.59 of this loan represented an extension of credit on the previous loan and $73.41 cash was paid to the bankrupt. At the date of bankruptcy this

debt had been reduced to $287.58. The financial statement signed by the bankrupt and his wife in connection with this loan recites:

"The undersigned having applied to Household Finance Corporation for a loan of $500, for 15 months, for the purpose of showing his, her or their ability to repay the same and inducing Household Finance Corporation to make said loan, hereby represent(s) and warrant(s) to Household Finance Corporation that the following is a full, complete and correct list of all of his, her or their debts and liabilities on 3-20-42. (If no debts, so state)"

On this statement the bankrupt listed debts of $426.59 owing to Household Finance Corporation and $450 owing to Cleveland Trust Company, and stated in his own handwriting, "We have no other debts."

The objecting creditor contends that (under Sec. 14, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c) the bankrupt should be denied a discharge because he failed to list the following debts on his financial statement:

| | | |
|---|---|---:|
| 1. | The Higbee Company | $ 30.72 |
| 2. | The May Company | 20.00 |
| 3. | Stone Shoe Company | 30.00 |
| 4. | B. R. Baker Company | 7.47 |
| 5. | The Bailey Company | 53.00 |
| 6. | William Taylor & Son Company | 27.00 |
| 7. | Commonwealth Loan Company | 87.91 |
| 8. | Geneva Bancroft | 195.00 |
| 9. | Basil Bancroft, Sr. | 514.15 |
| 10. | Harvard Business School | 1,400.00 |
| 11. | Ohio Loan & Discount Company (Mortgage) | 300.00 |
| 12. | The May Company (mortgage) | 167.52 |
| | Total | $2,832.77 |

Each of the loans made by the objecting creditor was secured by a chattel mortgage which the creditor says was taken only for psychological reasons and was not recorded. The mortgages covered furniture which the bankrupt says cost $2,000. Prior to the date of bankruptcy, it was sold for approximately $400, and from the proceeds of the sale, the bankrupt paid his debt to the Ohio Loan Company and paid $38.09 to the objecting creditor.

The bankrupt testified that he informed the objecting creditor of the six department store bills when he obtained the loan, that he told it he was going to use the $73.41 cash to pay them, and that the creditor told him he need not list them in that case. The creditor denies this and says that the bankrupt said he was going to use the money for dental work. It was not used for either of those purposes, but was used to pay the loan of Commonwealth Loan Company. Concerning that obligation, the bankrupt testified that he told the creditor, "I owed a small balance of $75 to $80 at Commonwealth and I was going to pay them off, increase my account with them and in that way get these odds and ends straightened out." (R. page 33.)

Regarding the liabilities to Geneva Bancroft, Basil Bancroft, Sr., and Harvard Business School, the bankrupt testified that the creditor was informed of them at the time of the first loan and that it told him they need not be listed. They were not mentioned at the time of the second loan. The creditor denies that it was ever informed of any of them.

The $195 owing to Geneva Bancroft, bankrupt's former wife, is for alimony owing since 1937. Apparently, she has never attempted to collect it.

According to the bankrupt's testimony, he told the objecting creditor about the note held by Basil Bancroft, Sr., his father, when he obtained the first loan and told it he had receipts showing that he had paid the note. He testified that the receipts were in a suit case which was stolen from his car in the fall of 1941. About six weeks after the date of the second loan, the bankrupt's father brought suit against him on the note in Lakewood Municipal Court, and on July 29, 1942, his father obtained judgment for $514.15.

As to the $1,400 note held by Harvard Business School, the bankrupt testified that he told the creditor it was for tuition while he was studying for his master's degree and that it was barred by the statute of limitations. He said the creditor told him that, if it was barred, it need not be listed.

The bankrupt testified that he obtained a loan of $300 from the Ohio Loan & Discount Company on February 21, 1942, and gave it a second mortgage on his furniture. (R. page 39.) He did not explain why this obligation was not listed on his

financial statement, nor was he asked for any explanation.

The note given to the May Company on August 8, 1941 (secured by a mortgage on some of bankrupt's furniture), was not disclosed at the hearing on the discharge. At the hearing on the application for a rehearing, Mr. Burnham of the May Company testified that $167.52 was owing on that mortgage on March 20, 1942.

Section 14, sub. c(3), of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c(3), provides that the bankrupt shall be granted a discharge unless the court is satisfied that the bankrupt has "obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition." A proviso of section 14, sub. c, provides that "if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

■ The findings of a referee will not be reversed unless they are clearly erroneous. Weisstein Bros. & Survol v. Laugharn, 9 Cir., 84 F.2d 419; Texas National Bank v. Edson, 5 Cir., 100 F.2d 789; In re Bendix, 7 Cir., 127 F.2d 759.

Under this rule there would be in ordinary circumstances no occasion for reversing the appraisal made by the Referee of the bankrupt and his evidence as to oral statements testified to have been made to the loan agent respecting other obligations; and there is strong support for his reasons for not granting rehearings except in exceptional circumstances. But the Court on review now is faced with a situation which it feels can not be resolved satisfactorily by finding that the objecting creditor was negligent in not earlier presenting evidence respecting the Ohio Loan and May Company obligations and chattel mortgages. Although the bankrupt opposed granting a rehearing and the Referee denied it, evidence which would have been presented on rehearing was taken, transcribed and certified in connection with the review of the Referee's order denying the application for rehearing.

Under the order entered by this Court, July 31, 1945, the entire evidence taken at the original hearing and on the hearing of the application for rehearing constitutes the record upon which decision must be based. Assuming without deciding that the Referee's findings in respect of the original hearing on discharge should not be disturbed under the rule above mentioned, yet a consideration of the evidence in support of the application for rehearing brings conviction that the failure to disclose the two obligations of the Ohio Loan and the May Company mortgages raises an obstacle to discharge which may not lightly be ignored even though tardily presented.

I agree with the Referee that there should be an end to litigation and also that controversy should be put at rest without undue delay; that lack of diligence should not be overlooked or rehearings granted except upon clear showing of injustice. But where, as here, two obligations of importance to be disclosed received no mention by the bankrupt in his application for the loan nor at any time until the hearing on his discharge, and where the creditor had no opportunity to discover the dates or character of these obligations until after the disclosure at the hearing, it does appear in the interest of full justice to give judicial examination and response thereto. The loan from the Ohio Loan Company, secured by chattel mortgage, was obtained hardly a month prior to the new loan from the objecting creditor of March 20, 1942. The mortgage to the May Company was given earlier but was in existence on the date above mentioned.

The bankrupt, from the record, appears to have been a person of intelligence, with financial experience in responsible employment. The need of disclosure must have been fully appreciated by him when seeking the loan. It is not too much to say that these omissions cast a shadow upon the validity and integrity of explanations given for failure to disclose the several other obligations. The evidential weight of these additional omissions tends to overthrow any satisfactory character attributable to the explanations given for the omission of those other obligations.

The Referee found that the creditor did not rely entirely upon the financial statement since it had a valid chattel mortgage securing its debt; but, in the light of facts

developed since the original hearing on discharge the chattel mortgage was or must have been known by the bankrupt to have been worthless, since less than a month before March 20, 1942, the date of the loan in question, he had given the Ohio Loan Company a chattel mortgage upon the same goods and· also, as it developed, the May Company had on that date a chattel mortgage securing an unpaid balance of $167.52 on some part of the bankrupt's household goods.

■ Giving due consideration to all favorable evidence and implications to support the order of discharge and testing this evidence by the additional evidence directed against discharge, the case seems in its final aspects to be controlled by principles stated in Re Harjers, D.C., 30 F.Supp. 445, as well as those of In re Peltz, 48 A.B.R., N.S., 786.

Accordingly the petition for review will be sustained and the order of the Referee granting discharge reversed.